**I.A.M. NATIONAL PENSION FUND, PLAN A, A BENEFITS, et al.**

v.

**SLYMAN INDUSTRIES, INC., et al., Appellees.**

**Nos. 89–7069 and 89–7070.**

United States Court of Appeals, District of Columbia Circuit.

Argued March 2, 1990.

Decided April 10, 1990.

Christopher A. Weals, with whom Anita Barondes, Deborah A. Folloni, Washington, D.C., Keith A. Reed, and William H. Nichols, Chicago, Ill., were on the brief for appellants in No. 89–7069 and appellees in No. 89–7070.

Denis F. Gordon, with whom Brad W. Spencer and Robert T. Osgood, Washington, D.C., were on the brief for appellees in No. 89–7069 and appellants in No. 89–7070.

Before RUTH BADER GINSBURG, D.H. GINSBURG, and SENTELLE, Circuit Judges.

Opinion for the Court filed by Circuit Judge D.H. GINSBURG.

D.H. GINSBURG, Circuit Judge:

Defendant Accurate Die Casting Co. made contributions to plaintiff I.A.M. National Pension Fund from 1976 until shortly before Accurate filed for relief under Chapter 11 of the Bankruptcy Code in 1985. When Accurate ceased making payments, the Fund sued two companies, Slyman Industries, Inc. and Milwaukee Die Casting Co., that are members of the same controlled group of corporations as Accurate, to compel payment of Accurate's "partial withdrawal" liability. *See* Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 *et seq.*, as amended by the Multiemployer Pension Plan Amendments Act of 1980, *id.* § 1385(b)(1), (2). The Fund did not sue Accurate itself, presumably because that company was protected by the automatic stay provision of the Bankruptcy Code. The district court granted summary judgment against Slyman and Milwaukee. When Accurate was dismissed from the jurisdiction of the bankruptcy court, the district court, at the instance of the Fund, entered summary judgment against Accurate as well.

The district court awarded the Fund pre-judgment and post-judgment interest, as well as liquidated damages in an amount equal to the pre-judgmnent interest due, but it denied the Fund's request for further liquidated damages in an amount equal to such post-judgment interest as might become due. The companies have appealed on the issue of their partial withdrawal liability, and the Fund appeals the denial of post-judgment liquidated damages. We affirm in all respects.

## I. BACKGROUND

In February 1989, some months after Accurate had filed under Chapter 11, the Fund notified the company of its claim for partial withdrawal liability in the amount of $205,431. This notification was made by a letter sent to Accurate but received by Arthur D. Rogers, the President of Milwaukee. Rogers "forwarded" the letter to Accurate's Vice President for Finance, and so notified the Fund. Accurate and Milwaukee have the same mailing address.

On February 21, 1986, the Fund sent Accurate a "Notice of Demand and Schedule of Payments," which would normally—the point is disputed here—open the 90-day period within which an employer may seek review of a withdrawal liability claim against it. *See* § 1399(b)(2)(A); *see also* § 1401(a)(1) (employer may initiate arbitration 60 days after plan sponsor responds to its request for review, or 120 days after such request, whichever is earlier). Neither Accurate nor either of the other companies in the group made any payments under the Schedule provided by the Fund, nor did any of them take any steps to obtain review or arbitration of the Fund's demand within the time limits established by the MPPAA.

In June 1986, the Fund sent Accurate a "Notification of Default," which threatened "legal action" if it did not receive the full amount due within 10 days; when it was not obliged, the Fund filed a Proof of Claim with the bankruptcy court in which Accurate's petition was pending. Neither Accurate nor its affiliates (it does not appear that a trustee was ever appointed) contested this filing in any way.

In March 1987, the Fund brought this suit in district court against Slyman and Milwaukee, based upon the MPPAA provision that employees of businesses under common control are to be treated as employees of a single employer, 29 U.S.C. § 1301(b), thus making all members of a controlled group jointly and severally liable for the withdrawal liability of any one of them. *See Pension Benefit Guaranty Co. v. Ouimet Corp.*, 630 F.2d 4, 11 (1st Cir. 1980); *Connors v. Calvert Development Co.*, 622 F.Supp. 877, 881 (D.D.C.1985). The court found that the February letters provided actual notice to Accurate, and through Arthur D. Rogers, to Milwaukee, and constructive notice to Slyman, of the Fund's claim against Accurate, and con-

cluded that the companies' failure to invoke the review and arbitration procedures of the MPPAA within the time limit provided in that statute barred them from contesting the Fund's determination of the amount owed. Accordingly, the court granted the Fund's motion for summary judgment against Slyman and Milwaukee. Accurate's petition for bankruptcy was dismissed in April 1988, and in August the court granted summary judgment against it as well. Meanwhile, however, in July—within 90 days after its dismissal from bankruptcy court—Accurate had sent the Fund a "modified and supplemental request for review" of the Notice of Demand it had received in February 1986.

## II. THE COMPANIES' APPEAL

■ The companies make related equitable and legal arguments for reversing the judgment against them. First, they contend that the rule of constructive notice, whereby notice to a withdrawing employer is effective as notice to all members of its controlled group, see *Connors v. Calvert*, *above*, ought not in equity to apply here, because the withdrawing employer was in bankruptcy and its affiliates in the controlled group, we are told, did "reasonably believe that the demand must be processed through the bankruptcy court." Thus, Accurate's "inaction that was justified by the automatic stay" should not bar the companies from contesting the amount of the withdrawal liability. The companies therefore claim that the "MPPAA's time periods should be equitably tolled" as to all of them for so long as Accurate was before the bankruptcy court, with the result that their July 1988 request for review would be timely and still pending.

The joint and several liability of a commonly controlled group of corporations precludes this argument. Accurate's protection from suit pursuant to the Bankruptcy Code simply cannot affect the derivative legal liability of a nonbankrupt affiliate, any more than one joint tortfeasor would be protected because another is in bankruptcy proceedings. In these particular circumstances, moreover, where the president of one of the other controlled companies received actual notice of the Fund's claim, the argument is also without any equitable merit. As the district court said, "nothing prevented [the affiliates] from requesting arbitration under the [MPPAA]." Failing to do so sealed their fate, and when Accurate lost the protection of the automatic stay, it was properly held liable for the same reason—it never sought review of, nor otherwise contested, the Fund's claim, either in or out of the bankruptcy court.

Second, the companies contend that the pendency of Accurate's bankruptcy petition tolled the time limit for seeking review and arbitration under the MPPAA, either because the MPPAA procedures are, as a matter of law, preempted by the automatic stay provision, or because "the Fund's [Notice of Demand] violated the automatic stay provision" of the Bankruptcy Code. Indeed, they suggest the Notice may for that reason have been ineffective as legal notice under the MPPAA, but the crux of their argument is that Congress's purpose of shielding debtors from financial pressures imposed by their creditors during the period of the automatic stay, see H.R.Rep. No. 595, 95th Cong., 2d Sess. at 220, *reprinted in* 1978 U.S.CODE CONG. & ADMIN.NEWS 5787, 6180 (Bankruptcy Law Revision), requires tolling of the MPPAA deadline for contesting withdrawal liability.

The tolling argument was presented for the first time in defending against this suit to compel payment in the district court and is thus untimely. Indeed, appellants called attention to the automatic stay provision only on appeal. Accurate should either have protested the Fund's Notice of Demand or objected to its Proof of Claim before the bankruptcy court. If the statutory time limit had already run when the Proof of Claim was filed, it should have raised the tolling argument there. *Cf. Trustees of the Chicago Truck Drivers, Helpers and Warehouse Workers Union Pension Fund v. Central Transport, Inc.*, 888 F.2d 1161 (7th Cir.1989) (MPPAA deadline for initiating arbitration proceedings tolled where bankrupt employer and other companies in controlled group timely con-

tested proof of claim for withdrawal liability in bankruptcy proceedings). Perhaps, having replied to the Fund's Notice of Demand by referring it to the bankruptcy court proceedings, Accurate was reluctant to turn around and argue in that forum that the Notice of Demand violated the automatic stay. Having failed, for whatever reason, to do so then, however, Accurate is barred from doing so now. Consequently, Slyman and Milwaukee are also time-barred; their claimed right now to seek arbitration of the withdrawal liability is purely derivative from Accurate's status as a bankrupt at the time it received the Fund's demand for payment, which has availed it not.

### III. THE FUND'S CROSS-APPEAL

■ Paragraph (2) of 29 U.S.C. § 1132(g) provides that whenever a pension plan prevails in litigation to compel an employer to pay delinquent contributions, "the court shall award the plan—

(A) the unpaid contributions,

(B) interest on the unpaid contributions, [and]

(C) an amount equal to the greater of—

(i) interest on the unpaid contributions, or

(ii) liquidated damages provided for under the plan...."

The Fund contends that it is entitled, under clause (i) of subparagraph (C), to "a remedial 'liquidated damage' award" equal in amount to the interest payable pursuant to subparagraph (B). The district court noted that the combined effect of subparagraphs (B) and (C) is to award double interest, but held that it could not award more than single interest for the post-judgment period, because that is all that is provided by the generally applicable statute governing post-judgment interest, 28 U.S.C. § 1961. 704 F.Supp. 301. The district court applied § 1961 because ERISA expressly provides that it is not to be construed to "alter, amend, modify, invalidate, impair, or supersede any law of the United States." 29 U.S.C. § 1144(d).

The Fund argues that because § 1132(g)(2)(C) provides for a liquidated damage award, it does not "establish a rate of interest on ERISA judgments," and thus does not conflict with § 1961. The Fund too quickly assumes, however, that even were subparagraph (C) read as providing for liquidated damages rather than for post-judgment interest, it would call for the doubling of post-judgment interest.

Clause (C)(i), our only concern here, does not by its terms extend until the date on which payment is received. Moreover, since certainty and ease of administration are generally the advantages to be gained by a liquidated damage provision, it would be unusual, if not anomalous, to read such a clause in a way that does not yield a determinate amount at the time that judgment is entered. Were the clause interpreted to cover interest accruing in the post-judgment period, there would be myriad post-judgment opportunities for disputes about which of the alternative measures of damages—(C)(i) or (C)(ii)—is the greater. While such disputes could be referred back to the judgment court for resolution, as the Fund suggests, we think it unlikely that Congress intended the provision for liquidated damages so to complicate the entry of a final judgment. Thus, while nothing in § 1132(g)(2) explicitly limits the accrual of liquidated damages (in an amount equal to interest) to the date of judgment, it is simply the less natural reading for subsection (C) to extend into the post-judgment period.

### IV. CONCLUSION

For the foregoing reasons, the order of the district court is

*Affirmed.*