Clifton McDONALD, Hermann V. Myers, Sr., William G. McIntyre, Daniel L. Sandy, in their capacities as Trustees of and on behalf of Freight Drivers and Helpers Local Union No. 557 Pension Fund, Plaintiffs–Appellees,

v.

CENTRA, INCORPORATED, a Delaware corporation, General Highway Express, an Ohio corporation, Central Transport, Inc., a Michigan corporation, GLS Leasco, Inc., a Michigan corporation, the Mason & Dixon Tank Lines, a Tennessee corporation, Central Cartage Company, a Michigan corporation, Defendants–Appellants. (Two Cases)

Nos. 90–2483, 90–2514.

United States Court of Appeals, Fourth Circuit.

Argued April 11, 1991.

Decided Oct. 11, 1991.

As Amended Nov. 21, 1991.

Patrick A. Moran, Simson Moran, Birmingham, Ala., argued (Terri L. North, Simson Moran, Birmingham, Ala., Frances Kanterman, Frank, Bernstein, Conaway & Goldman, Baltimore, Md., on brief), for defendants-appellants.

Christine Ann Williams, Abato, Rubenstein, Abato & Smith, P.A., Lutherville, Md., argued, for plaintiffs-appellees.

Jeffrey B. Cohen, Senior Counsel, Pension Ben. Guar. Corp., Washington, D.C., argued (Carol Connor Flowe, Gen. Counsel, Jeanne K. Beck, Deputy Gen. Counsel, Robert S. Marsel, Pension Ben. Guar. Corp., on brief), for amicus curiae.

Before ERVIN, Chief Judge, and PHILLIPS and HAMILTON, Circuit Judges.

## OPINION

ERVIN, Chief Judge:

Clifton McDonald, Hermann V. Myers, Sr., William G. McIntyre, and Daniel L. Sandy, the trustees of a qualified multiemployer pension plan, brought this action to collect from the solvent members of a group of corporations allegedly under common control with Mason & Dixon Tank Lines ("Mason & Dixon"), the withdrawing employer. The group of defendant corporations ("the corporate group")[1] appeals the trial court's grant of summary judgment in favor of the pension plan as well as the denial of the group's motion to dismiss. Four issues are presented on appeal. First, whether there is a genuine issue of material fact as to the defendants' membership in a control group. Second, whether the corporate group may defend against

1. By corporate group, we refer to the defendants. When referring to a set of corporations under common control, we use the term "control group."

a withdrawal liability suit with defenses they failed to raise during the period of arbitration. Third, whether Mason & Dixon's discharge in bankruptcy operates as a discharge of the liability of the solvent members of the corporate group. Fourth, whether the award of attorney's fees was proper. On each issue we concur with the district court's decision. Accordingly, we affirm.

## I.

### A.

The trustees on behalf of the Freight Drivers and Helpers Local Union No. 557 Pension Fund ("the Fund") gave notice and demand for payment of the assessed withdrawal liability in January of 1985. In June, 1989 the trustees of the Fund filed suit to collect the withdrawal liability from the members of the corporate group who were solvent. Thereafter, the trustees moved for summary judgment. The corporate group moved to dismiss the complaint. Both sides opposed the other's motion. The district court granted the Fund's motion for summary judgment and denied the corporate group's motion to dismiss the complaint. 118 B.R. 903.

The trial court held that arbitration is a jurisdictional prerequisite to the defendant's right to raise defenses to the federal court collection action; thus, the failure of the corporate group to initiate arbitration within the statutory period barred it from contesting the Fund's claim. Alternatively, the district court held that the defendants were a group of commonly controlled corporations on the relevant date; and that Mason & Dixon's discharge in bankruptcy was irrelevant to the liability of the solvent members of the control group. Finally, the trial court held the doctrine of equitable tolling to be unavailable in suits to collect withdrawal liability. The corporate group appealed.

### B.

Mason & Dixon filed a petition in bankruptcy seeking relief under Chapter 11 on March 29, 1984. At that time, Mason & Dixon was a signatory to a collective bargaining agreement with the Freight Drivers and Helpers Local Union No. 557. The agreement required Mason & Dixon to make payments to the Fund. The Fund did not, however, receive notice of the filing. The Fund was made aware of the filing nearly six months later, on November 26, 1984. This occurred only in response to an inquiry made by the Fund.

On January 11, 1985 the Fund sent Mason & Dixon a notice and a demand for payment of withdrawal liability in the amount of $619,101. The fund also filed a proof of claim in the bankruptcy proceedings.

On March 14, 1986 defendants Central Transport and GLS Leasco, filed objections to the Fund's proof of claim. On March 29, 1986 Mason & Dixon's plan of reorganization was confirmed in the bankruptcy proceeding.

Subsequently, the Fund reviewed the January, 1985 assessment and found that there was a partial rather than a complete withdrawal. The Fund reduced its assessment and accordingly its claim from $619,101 to $401,960.

In May of 1989, the objections to the Fund's proof of claim were still pending in the Chapter 11 proceedings. On June 6, 1989, the Fund moved for permission to withdraw the proof of claim, and instead seek payment from the solvent corporate group members. This action was filed on June 9, 1989 by the Fund. A month later, on July 19, 1989, the bankruptcy court granted the Fund's motion to withdraw its proof of claim.

Upon confirmation of Mason & Dixon's plan of reorganization under the bankruptcy proceedings, the company's old stock, previously owned by Central Transport, was canceled and reissued to Centra in exchange for a capital contribution of $1,000,000.

## II.

### A.

The statutory basis of this appeal is the Multiemployer Pension Plan Amendments

Act ("MPPAA"), 29 U.S.C. § 1381 *et seq.* Prior to the passage of the MPPAA, Congress faced the problem of employers withdrawing from financially weak pension plans; such withdrawals had a tendency to reduce the contribution base, adding to the contribution rate of employers presently participating in the plan, while also increasing the incentive for future withdrawals. *Pension Benefit Guar. Corp. v. R.A. Gray,* 467 U.S. 717, 722 n. 2, 104 S.Ct. 2709, 2714 n. 2, 81 L.Ed.2d 601 (1984) (citing *Pension Plan Termination Insurance Issues: Hearings Before the Subcommittee on Oversight of the House Committee on Ways and Means,* 95th Cong., 2d Sess. 22 (1978) (statement of Matthew M. Lind)). With passage of the MPPAA, a withdrawing employer was required to pay its proportionate share of the plan's unfunded vested benefits, calculated as the difference between the present value of the vested benefits and the current value of the plan's assets. 29 U.S.C. §§ 1381, 1391. The consequent liability of a withdrawal "safeguards the [remaining] participants in multiemployer plans by requiring a withdrawing employer to fund its fair share of the plan obligations incurred during its association with the plan." *Connolly v. Pension Benefit Guar. Corp.,* 475 U.S. 211, 225, 106 S.Ct. 1018, 1026, 89 L.Ed.2d 166 (1986).

### B.

The corporate group argues that there is an issue of material fact as to their membership in the statutorily [2] defined control group. The group rests this contention on a rather thin affidavit. The affidavit states only that Central Transport, Inc. owned no stock of Mason & Dixon on or after March 30, 1986. The stock, however, was simply canceled and reissued to Centra pursuant to the restructuring terms of the reorganization of Mason & Dixon. The district court found that "the defendants [were] under common control with Mason & Dixon." This finding is not incorrect.

**2.** *See generally* 26 U.S.C.A. (I.R.C.) § 1563(a).

### C.

■ As a prologue to our discussion of the remaining issues, we address the sufficiency of notice to the group. The corporate group contends that it was never given notice of the assessment of withdrawal liability, alleging essentially that the notice to Mason & Dixon was inadequate. This contention falls rather quickly as notice to one member of the control group constitutes notice to all members of the group. *See e.g. I.A.M. National Pension Fund v. Slyman Industries,* 901 F.2d 127, 129 (D.C.Cir.1990); *Trustees of the Chicago Truck Drivers, Helpers and Warehouse Union (Independent) Pension Fund v. Central Transport, Inc.,* 888 F.2d 1161, 1163 (7th Cir.1989); *Board of Trustees of the Western Conference of Teamsters Pension Fund v. H.F. Johnson, Inc.,* 830 F.2d 1009, 1013 (9th Cir.1987); and *IUE AFL–CIO Pension Fund v. Barker & Williamson, Inc.,* 788 F.2d 118, 127 (3d Cir. 1986).

The notice provided to Mason & Dixon adhered to the specifications of the statute that "[a]s soon as practicable after an employer's complete or partial withdrawal, the plan sponsor shall—(A) notify the employer of—(i) the amount of the liability, and (ii) the schedule for liability payments, and (B) demand payment in accordance with the schedule." 29 U.S.C. § 1399(b)(1). The language of the statute does not support the inference that the Fund had a responsibility to notify the other members of the control group, other than Mason & Dixon. The burden of subsequent notification to the other control group members lies on the corporation receiving the initial notice. *See Trustees of the Chicago Truck Drivers, Helpers and Warehouse Union (Independent) Pension Fund v. Central Transport, Inc.,* 888 F.2d 1161, 1163 n. 3; and *IUE AFL–CIO Pension Fund v. Barker & Williamson, Inc.,* 788 F.2d 118, 128.

### D.

In rejecting the defenses of the corporate group the district court did so on two

grounds. First, the group did not seek arbitration within the statutory period; as arbitration is a jurisdictional prerequisite, the defenses raised were jurisdictionally barred. Second, if arbitration is not a prerequisite, the defenses do not come within one of the exceptions to the doctrine of exhaustion of administrative remedies. We affirm the trial court's decision on this issue based on its second ground only.

■ While conceding that circuit courts have construed the § 1401 provision in question "as a prudential rather than a jurisdictional prerequisite" to which the doctrine of administrative remedies exhaustion applies,[3] the district court held arbitration to be a jurisdictional bar.

The district court based its conclusion on the language of the statute and the ostensible inapplicability of the exhaustion of administrative remedies doctrine to the MPPAA.

The statute states that any dispute between an employer and the plan sponsor of a multiemployer plan regarding a determination made under §§ 4201–4219 shall be arbitrated. 29 U.S.C. 1401(a)(1). The fact that arbitration is mandatory, does not, in and of itself, transform the requirement into a jurisdictional prerequisite. As the D.C. Circuit stated in *I.A.M. Nat'l Pension Fund Benefit Plan C v. Stockton TRI Indus.*,

> Only when Congress states in clear unequivocal terms that the judiciary is barred from hearing an action until the administrative agency has come to a decision, as in the Social Security Act issue in *Salfi*, has the Supreme Court held that exhaustion is a jurisdictional prerequisite.

727 F.2d 1204, 1207. The mandatory language of § 1401 pales beside the text of the Social Security Act held to bar jurisdiction in *Weinberger v. Salfi*, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975). The Social Security Act provided:

> The findings and decisions of the Secretary after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decisions of the Secretary shall be reviewed by any person, tribunal, or government agency except as herein provided.

42 U.S.C. § 405(h). The text of the MPPAA indicates only that arbitration is compulsory; there is no language that explicitly creates a jurisdictional bar. Accordingly, we hold that the text of the statute does not make arbitration a jurisdictional prerequisite. Given the textual basis for our holding, we need not discuss the district court's other rationale for construing arbitration as a jurisdictional bar, the inapplicability of the administrative exhaustion doctrine to MPPAA.

■ The contentions put forward by the corporate group do not fall within an exception to the doctrine of administrative exhaustion. Our analysis begins with recognition of the fact that the exhaustion doctrine acts as a prudential rule that provides the courts "with a method to exercise comity toward administrative agencies and to promote efficient use of judicial resources while protecting the rights of parties who have come before the court seeking relief." *Morrison–Knudsen Co., Inc. v. CHG Int'l, Inc.*, 811 F.2d 1209, 1223 (9th Cir.1987), *cert. denied*, 488 U.S. 935, 109 S.Ct. 358, 102 L.Ed.2d 349 (1988). There are several exceptions to the requirement that parties exhaust administrative remedies before seeking refuge in federal courts. These include those instances where (1) the dispute is a matter of statutory construction; (2) the utilization of administrative procedures would cause irreparable injury; and (3) the resort to administrative procedures would be futile. As the last two exceptions are inapplicable here,

---

**3.** *See, e.g., I.A.M. Nat'l Pension Fund Benefit Plan C v. Stockton TRI Indus.*, 727 F.2d 1204, 1207–09 (D.C.Cir.1984); *T.I.M.E.–D.C., Inc. v. Management–Labor Welfare & Pension Funds*, 756 F.2d 939, 944–45 (2d Cir.1985); *Central States, Southeast and Southwest Pension Fund v. 888 Corp.*, 813 F.2d 760, 764 (6th Cir.1987); *Robbins v. Admiral Merchants Motor Freight, Inc.*, 846 F.2d 1054, 1056 (7th Cir.1988); *Crown Cork & Seal Co. v. Central States, Southeast and Southwest Areas Pension Fund*, 881 F.2d 11, 19 (3d Cir.1989).

our discussion will focus on the statutory construction exception.

 The corporate group invokes the statutory construction exception by arguing that the discharge of withdrawal liability for Mason & Dixon by the bankruptcy court also discharges all members of the control group. The corporate group avers that it should be allowed to raise the bankruptcy discharge as a defense in the collection suit, without having raised it during arbitration proceedings, because the consequence of the discharge is necessarily an issue of statutory construction. Thus, the issue falls within the first exception to the exhaustion of administrative remedies doctrine.

The corporate group's argument rests, rather precariously, on *Central States, Southeast and Southwest Areas Pension Fund v. 888 Corp.* In *888 Corp.* the defendant tried to assert as a defense to a collection action a provision of the Deficit Reduction Act of 1984, which eliminated the application of MPPAA to employers withdrawing prior to the passage of the act. This provision was not enacted until after the defendant's statutory time to start arbitration had elapsed. Moreover, the provision was not enacted until after the collection suit began. The Sixth Circuit allowed the defense. *Id.,* 813 F.2d 760, 766–67.

The facts presented to the Sixth Circuit in *888 Corp.* and those we face in the instant case are not analogous. In the former case the defendant found itself the beneficiary of a statute determining whether MPPAA even applied to a particular withdrawal by the corporation. It is clear here, however, that even if Chapter 11 discharges one or all members of the control group, the statute does not render MPPAA inapplicable. While *888 Corp.* could not have foreseen the passage of a statute eliminating the retroactive application of MPPAA, Chapter 11 has long been in existence.

Moreover, merely asserting that MPPAA and Chapter 11 require interpretation will not necessarily invoke this exception; "it is beyond cavil that the existence of an issue of statutory interpretation, standing alone

does not justify bypassing arbitration." *I.A.M. National Pension Fund v. Clinton Engines Corp.,* 825 F.2d 415, 418 (D.C.Cir. 1987). The control group should only be allowed to avoid arbitration if "neither party timely presses the [arbitration requirement], and the court finds that deferring a court contest while the parties repair to arbitration 'will neither lead to the application of superior expertise nor promote judicial economy[,]'" *Id.* at 417, *quoting Grand Union Co. v. Food Employers Labor Relations Association,* 808 F.2d 66, 70 (D.C.Cir.1987). The arbitration requirement was raised by the Fund in the court below. Moreover, judicial economy would have been promoted had the corporate group sought arbitration in a timely manner. As will be made clear in our subsequent discussion of equitable tolling, the corporate group had no legitimate reason for avoiding arbitration earlier. This post-litigation request for arbitration has consumed the time of two courts, delayed the group's withdrawal contribution to the Fund, and could affect the stability and the security of the pension plan. Were we to grant this late request for minimal statutory interpretation, the contribution would be further delayed, the group could appeal the arbitration agreement, and consume the time of the courts yet again. Accordingly, we hold that these defenses do not fall within the statutory construction exception of the doctrine of exhaustion of administrative remedies.

### E.

 As a premise for their argument for arbitration, the corporate group asserts that the time to initiate arbitration was equitably tolled when the Fund filed a proof of claim in the Mason & Dixon bankruptcy proceedings. This contention is without merit. The doctrine of equitable tolling is inapplicable in MPPAA cases. The MPPAA was created "(1) to protect the interests of participants and beneficiaries in financially distressed multiemployer plans, and (2) ... to ensure benefit security to plan participants." *Barker & Williamson,* 788 F.2d 118, 127, (original ellipses)

(quoting H.R.Rep. No. 869, 96th Cong., 2d Sess. 71 (1980)), *reprinted in* 1980 U.S.Code Cong. & Admin.News 2918, 2939. As the district court noted, the 90 day period in which an employer has to review and request arbitration was inserted in the statute to protect the plaintiffs. The statute insures that when a dispute arises about withdrawal, it will be expeditiously addressed.

Statutes of limitations, however, are usually "designed to assure fairness to the defendants." *Burnett v. New York Central R.R. Co.*, 380 U.S. 424, 428, 85 S.Ct. 1050, 1055, 13 L.Ed.2d 941 (1965). This is so because "the right to be free of stale claims in time comes to prevail over the right to prosecute them." *Id.* (citing *Order of R.R. Telegraphers v. Railway Express Agency, Inc.*, 321 U.S. 342, 348–49, 64 S.Ct. 582, 586, 88 L.Ed. 788 (1944)). Tolling, where equity merits, does not undercut the purpose of traditional statutes of limitations.

Under the MPPAA, however, allowing a defendant to toll the period for arbitration during bankruptcy proceedings and a collection suit undercuts the purpose of the statute, the timely adjudication of withdrawal liability disputes to insure the security of multiemployer plans. Thus, we hold that equitable tolling is inapplicable in the MPPAA context.

### F.

Next we take up the issue of whether Mason & Dixon's discharge in bankruptcy discharged withdrawal liability of the other members of the corporate group. The defense offered by the corporate group is analogous to that offered in *I.A.M. Nat'l Pension Fund v. Slyman Indus.* In *Slyman*, on equitable grounds, the solvent members of a control group argued that notice to a withdrawing employer, in bankruptcy proceedings, should not serve as constructive notice to all, as the group reasonably believed the demand would be addressed by the bankruptcy court. 901 F.2d 127, 129. The solvent members argued, as the defendants do here, that failure to seek arbitration should have been excused through equitable tolling. *Id.*, at 129–130.

The D.C. Circuit stated "[t]he joint and several liability of a commonly controlled group of corporations precludes this argument." *Id.*, at 129. The court noted that the withdrawing employer could not affect the derivative legal liability of a nonbankruptcy affiliate, for the same reason that one tort-feasor would not be protected because another was in bankruptcy proceedings. *Id.* We agree.

As the district court stated, while a control group may be treated as a "single employer" under the MPPAA, it is a defendant with many pockets. Were all members of the group discharged, this court would allow the defendant to mark its front pockets bankrupt, while removing assets to its back pockets. Accordingly, the corporate group is jointly and severally liable.

### G.

Finally, the corporate group contends that the district court erred in awarding attorney's fees; alternatively, the amount of the award was unreasonable. The meritless protestations of the group to the contrary, when a fund is successful in a suit to recover delinquent contributions attorneys fees are mandatory not discretionary. *See* 29 U.S.C. 1132(g).

The fund, nevertheless, contends that attorney's fees are not permitted when a delinquent contribution action constitutes an insignificant part of a case, and, instead, the predominant issue is statutory interpretation. *See H.C. Elliott, Inc. v. Carpenters Pension Trust Fund for Northern California*, 663 F.Supp. 1016 (N.D.Cal. 1987), *aff'd*, 859 F.2d 808 (9th Cir.1988), *cert. denied*, 490 U.S. 1036, 109 S.Ct. 1934, 104 L.Ed.2d 406 (1989). As noted earlier the instant case does not fall within the statutory construction exception. It is, therefore, essentially a collection action. Thus, fees are mandatory. See e.g., *Trustees of Amalgamated Insurance Fund v. Sheldon Hall Clothing, Inc.*, 862 F.2d 1020, 1023–24 (3d Cir.1988), *cert. denied*, 490 U.S. 1082, 109 S.Ct. 2104, 104 L.Ed.2d 665 (1989); and *Teamsters Pension Fund v. Allyn Transportation Co.*, 832 F.2d 502, 507 (9th Cir.1987). Moreover, reviewing

the amount of fees awarded we find no abuse of discretion.

### III.

For the reasons set forth in the preceding discussion we affirm the decision of the district court.

AFFIRMED.