16 F.3d 1386
 17 Employee Benefits Cas. 2348
 Paul S. DOHERTY, Jr., Richard St. Pierre, Monomoy, Inc.,
Arrowpac, Inc., St. Doherty Truck Lines, Inc.,
Arrowpac/San Juan Freight, Inc., Saddle
Ridge Associates, Appellants,
v.
TEAMSTERS PENSION TRUST FUND OF PHILADELPHIA AND VICINITY.
 No. 93-5154.
 United States Court of Appeals,
Third Circuit.
 Argued Sept. 28, 1993.
Decided Feb. 25, 1994.
As Amended on Limited Grant of Rehearing March 17, 1994.
Sur Petition for Panel Rehearing March 17, 1994.
 
 Charles X. Gormally (Argued), Arthur L. Porter, Jr., Brach, Eichler, Rosenberg, Silver, Bernstein, Hammer & Gladstone, Roseland, New Jersey, Attorneys for Appellants.
 Paul A. Friedman (Argued), DeMaria, Ellis, Hunt, Salsberg & Friedman, Newark, New Jersey, Attorneys for Appellee.
 Before: SCIRICA, ALITO and SEITZ, Circuit Judges.
 OPINION OF THE COURT
 SCIRICA, Circuit Judge.
 
 
 1
 This appeal concerns the subject matter and time limits for arbitration under the Multiemployer Pension Plan Amendments Act of 1980 (MPPAA), Pub.L. No. 96-364, 94 Stat. 1208 (codified as amended in scattered sections of 5, 26 & 29 U.S.C., 1988 & Supp. IV 1992). Appellants are corporations, individuals, and a sole proprietorship that were assessed withdrawal liability under the MPPAA for the withdrawal of Arrow Carrier Corporation from a multiemployer pension fund, Appellee Teamsters Pension Trust Fund of Philadelphia. Appellants disputed their liability in an action in federal district court, and also attempted to initiate arbitration. The district court found the MPPAA required Appellants to arbitrate all their claims, and that their initiation of arbitration was untimely. The court therefore granted summary judgment for the Fund. Doherty v. Teamsters Pension Trust Fund, Civ.A. No. 92-523, Memorandum Opinions of Nov. 2, 1992 and Feb. 19, 1993 (D.N.J.). We hold one claim should be resolved in the courts rather than in arbitration. We also hold the determination of timeliness requires additional inquiry and that Appellants may qualify for equitable tolling of the time limit. For these reasons we will vacate and remand.I.
 
 
 2
 The MPPAA, amended to the Employee Retirement Income Security Act of 1974 (ERISA), Pub.L. No. 93-406, 88 Stat. 829 (codified as amended in scattered sections of 5, 18, 26, 29, 31 & 42 U.S.C., 1988 & Supp. IV 1992), regulates multiemployer pension plans. "Congress enacted MPPAA in particular because it found that existing legislation 'did not adequately protect plans from the adverse consequences that resulted when individual employers terminate[d] their participation in, or withdr[e]w from, multiemployer plans.' " Flying Tiger Line v. Teamsters Pension Trust Fund, 830 F.2d 1241, 1243 (3d Cir.1987) (quoting Pension Benefit Guar. Corp. v. R.A. Gray & Co., 467 U.S. 717, 722, 104 S.Ct. 2709, 2714, 81 L.Ed.2d 601 (1984)) (alteration in original). The act sets rules for determining responsibility for a plan's unfunded liabilities when an employer withdraws from the plan, and for collecting such liability.
 
 
 3
 Withdrawal liability is calculated and assigned as set forth in 29 U.S.C. Secs. 1381-1399. When an employer withdraws from a multiemployer pension fund, it is liable for a pro rata share of the unfunded benefits the plan owes the employees. 29 U.S.C. Secs. 1381, 1391. All entities under common control with a contributing employer, as defined under Internal Revenue Code standards, are treated as a single employer. Id. Sec. 1301(b)(1). The plan sponsor calculates withdrawal liability, notifies the employer, and demands payment. Id. Sec. 1399(b)(1). The employer may request that the plan sponsor review its determination, and, if the review is unsatisfactory or not timely, may initiate arbitration within a set period of time. Id. Sec. 1401(a)(1). If no arbitration proceeding is initiated within the time limit (whose proper calculation is at issue in this case, as discussed infra at Part V), "the amounts demanded by the plan sponsor ... shall be due and owing," and the plan sponsor may bring a collection action in court. Id. Sec. 1401(b)(1).
 
 II.
 
 4
 Arrow, a trucking firm, was a contributing member of Teamsters Pension Trust Fund of Philadelphia. Paul S. Doherty and Richard St. Pierre owned all Arrow stock until January, 1988, when they sold it to Monomoy, Inc., another corporation they owned. At that time, St. Doherty Truck Lines, Inc. and Arrowpac, Inc., previously wholly owned subsidiaries of Arrow, became wholly owned subsidiaries of Monomoy. Arrowpac/San Juan Freight, Inc. was at all relevant times a wholly owned subsidiary of Monomoy.
 
 
 5
 On January 13, 1989, after Arrow transferred four of its trucking terminals to Monomoy for no consideration, Monomoy sold all its stock in Arrow to Anthony Matarazzo for $10,000.00. Appellants explain they sold Arrow because it was no longer profitable. They claim Matarazzo assumed all of Arrow's potential liabilities, including withdrawal liabilities.
 
 
 6
 Arrow ceased operations December 6, 1989, after it lost insurance coverage. It filed for bankruptcy December 15. This cessation of operations constituted complete withdrawal from the multiemployer pension fund. Id. Sec. 1383(a)(2). On May 28, 1991, the Fund's administrator sent letters to Saddle Ridge Associates (owned solely by Doherty), Monomoy, St. Doherty, Arrowpac, and San Juan notifying them that they were former members of a group under common control with Arrow, that they had engaged in a transaction to evade or avoid liability, and that they were liable for Arrow's withdrawal liability. On the same date, the administrator sent letters to Doherty and St. Pierre, asserting that they were "alter egos" of Monomoy, that they had engaged in a transaction to evade or avoid liability, and that they were individually liable for Arrow's withdrawal liability.
 
 
 7
 By letters dated August 22, 1991, all Appellants except Monomoy requested review of the Fund's liability determination. These letters arrived August 26, 1991, except Arrowpac's, which arrived August 28. The Fund affirmed its decision on review by letter dated January 30, 1992.
 
 
 8
 On February 19, 1992, Appellants filed this action in federal court for declaratory judgment that they were not liable for withdrawal payments to the plan. On February 27, 1992, all Appellants except Monomoy sent a letter to the American Arbitration Association requesting arbitration. On March 6, they sent the arbitration fee. On April 1, Monomoy filed a request for arbitration.
 
 
 9
 The district court granted the Fund's motion for summary judgment.[1] The court held it lacked subject matter jurisdiction because the MPPAA requires arbitration of disputes regarding withdrawal liability, see 29 U.S.C. Sec. 1401(a), and limits post-arbitration jurisdiction in the courts to appeals from arbitrations and actions to enforce arbitral awards, see id. Sec. 1401(b)(2) & (3). The court also found Appellants' February 27 application for arbitration untimely under Sec. 1401(a)(1). In addition, it held that the failure to include the filing fee in the original application meant arbitration was not initiated until March 6. Finally, the court found that the sickness and death of the Appellants' counsel, Allan Klinger, to which Appellants attributed their late filing, did not constitute the "extraordinary circumstances" that would merit equitable tolling of the statute of limitations.
 
 
 10
 Appellants filed a motion for reconsideration of their cross-motion, asserting the district court had disregarded certain facts relating to the timeliness of their arbitration demand, adding details regarding Klinger's illness, and contending the court overlooked or misapplied the law regarding equitable tolling. The court denied the motion, and this appeal followed.
 
 III.
 
 11
 We have jurisdiction under 28 U.S.C. Sec. 1291 (1988) of the district court's grant of summary judgment. We apply "the same test the district court should have utilized initially. Inferences to be drawn from the underlying facts contained in the evidential sources submitted to the trial court must be viewed in the light most favorable to the party opposing the motion." Goodman v. Mead Johnson & Co., 534 F.2d 566, 573 (3d Cir.1976), cert. denied, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977). The mere existence of some alleged factual dispute does not necessarily preclude summary judgment, but a motion therefor should only be granted if a reasonable factfinder could only find for the moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 251-52, 106 S.Ct. 2505, 2509-10, 2511-12, 91 L.Ed.2d 202 (1986). Like our review of the record for summary judgment, our review of the district court's interpretation of statutes and regulations is plenary. Bechtel v. Robinson, 886 F.2d 644, 647 (3d Cir.1989); Barnes v. Cohen, 749 F.2d 1009, 1013 (3d Cir.1984), cert. denied, 471 U.S. 1061, 105 S.Ct. 2126, 85 L.Ed.2d 490 (1985). We review the district court's refusal to equitably toll the arbitration time limit for abuse of discretion. Kingstate Oil v. M/V Green Star, 815 F.2d 918, 922 (3d Cir.1987).
 
 IV.
 
 12
 Appellants assert, with minimal briefing, they should be allowed to litigate, rather than arbitrate, two of their claims: that the Fund inflated their liability by including the liability of two unrelated companies,[2] and that Doherty and St. Pierre should not be liable as alter egos of Monomoy, Inc. We conclude they are correct with regard to the alter ego question.
 
 
 13
 The MPPAA requires arbitration for "[a]ny dispute between an employer and the plan sponsor ... concerning a determination made under sections 1381 through 1399 of [title 29]." 29 U.S.C. Sec. 1401(a)(1). We stated in Flying Tiger:
 
 
 14
 where the party against which withdrawal liability is being asserted was certainly part of the controlled group of an employer subject to MPPAA at some point in time, and where the issues in dispute fall within the purview of MPPAA provisions that are explicitly designated for arbitration, the Act's dispute resolution procedures must be followed.
 
 
 15
 Flying Tiger, 830 F.2d at 1247. We noted the expressed congressional preference for arbitration under the MPPAA, and that arbitration promotes judicial economy. Id. at 1248-49.
 
 
 16
 The Flying Tiger analysis requires arbitration of Appellants' dispute over whether their liability was wrongly inflated. The corporations were "certainly part of the controlled group of an employer subject to MPPAA" at one time, because two individuals, Doherty and St. Pierre, owned 100% of Arrow and the other corporations' stock.[3] And "the issues in dispute fall within the purview of" the arbitrable provisions. When Appellants claim their assessment included liability of other companies, they are essentially disputing what portion of the pension plan's unfunded vested benefits are properly laid at their doorstep, and what portion should be the responsibility of other plan members. This issue is governed by Sec. 1391, which states, "[t]he amount of the unfunded vested benefits allocable to an employer that withdraws from a plan shall be determined in accordance with ... this section." 29 U.S.C. Sec. 1391(a). Arbitration is required for this "dispute between an employer and the plan sponsor ... concerning a determination made under" section 1391. 29 U.S.C. Sec. 1401(a)(1).
 
 
 17
 Whether or not Doherty and St. Pierre are properly subjected to withdrawal liability as alter egos of Monomoy, Inc., however, is a different kind of question. Here we cannot say the two individuals were "certainly part of the controlled group" at any time--if they prevail in their claim that they have never been the alter egos of Monomoy, it will mean they were never part of the controlled group. The arbitrable dispute in Flying Tiger was "whether [the appellant] ceased to be a MPPAA employer in time to avoid liability for [the related corporation's] withdrawal." Flying Tiger, 830 F.2d at 1250. We distinguished this situation from disputes properly resolved in the courts on whether a company had become an MPPAA employer in time to incur liability for a related company's withdrawal, id., and disputes regarding "entities that never have been employers subject to MPPAA and that, therefore, legitimately question application of MPPAA's dispute resolution procedures to them," id. at 1251. The distinction rests on the fact that Sec. 1401(a)(1) mandates arbitration for disputes between "an employer and the plan sponsor," 29 U.S.C. Sec. 1401(a)(1) (emphasis added), and an entity that is not an MPPAA employer because it has never been in a controlled group with the contributing entity is not subject to arbitration. Thus, just as "[w]hether a corporation has acquired control of a contributing employer by the date the contributing company withdraws from a multiemployer pension fund is a legal question for a district court to decide," Board of Trustees of Trucking Employees Welfare Fund, Inc.--Pension Fund v. Centra, 983 F.2d 495, 501 (3d Cir.1992) (emphasis added), whether an individual has ever had control of a contributing company as an alter ego is a question for the courts to decide. Accord Teamsters Joint Council No. 83 v. Centra, Inc., 947 F.2d 115, 122 (4th Cir.1991) (exception to "statutory arbitration command has been found applicable only in cases where the employer claims that it did not become an employer for MPPAA purposes in time to acquire withdrawal liability, or where the employer asserts that it was never an MPPAA employer and thus is not subject to ERISA's dispute resolution procedures."); Bowers v. Transportacion Maritima Mexicana, S.A., 901 F.2d 258, 261 (2d Cir.1990) ("The issue whether [Appellee] was an 'employer' within the meaning of the MPPAA is properly for the courts, not an arbitrator, to determine."). The issue of whether Doherty and St. Pierre are alter egos of Monomoy is therefore properly resolved in the courts.
 
 V.
 
 18
 Appellants also contend that, to the extent their claims are arbitrable, the district court wrongly found the requests for arbitration untimely. After review, we believe a determination on timeliness cannot be made on the record with respect to the parties that filed for arbitration February 27, 1992, and that more explication is needed regarding both the rules that apply to calculating the time periods and the particular circumstances in this case.
 
 
 19
 Arbitration must be initiated within 60 days following the earlier of "the date of notification to the employer under [29 U.S.C.] section 1399(b)(2)(B)," or "120 days after the date of the employer's request [for review] under [29 U.S.C.] section 1399(b)(2)(A)." 29 U.S.C. Sec. 1401(a)(1). "Notification to the employer" is the notification by the plan regarding its review of its decision.
 
 
 20
 Appellants received notification on January 30, 1992. The district court found the date of the "employer's request" for review to be August 26, 1991 for all Appellants except Arrowpac, whose request was dated August 28. One hundred twenty days from August 26, 1991 was December 24, and 120 days from August 28 was December 26. Both dates were earlier than the date of notification (January 30, 1992), so they begin the 60-day period during which arbitration could be initiated.
 
 
 21
 In counting the days, both parties and the district court applied the Pension Benefit Guaranty Corporation's regulations, which provide:
 
 
 22
 If the last day of the period is a Federal, State, or local holiday or a non-business day for one of the parties or the arbitrator, the period runs until the end of the first business day that follows. Holidays or non-business days occurring during the running of the period of time are included in calculating the period.
 
 
 23
 29 C.F.R. Sec. 2641.11 (1992). It appears, however, that this regulation does not apply to this dispute. Section 1401(a)(2) of 29 U.S.C. requires arbitration to be conducted according to rules promulgated by the Pension Benefit Guaranty Corporation, which in turn allow arbitration under other approved procedures, 29 C.F.R. Sec. 2641.13. The American Arbitration Association (AAA) rules elected by the parties in this case were approved at 50 Fed.Reg. 38046 (Sept. 19, 1985). See Teamsters Pension Trust Fund Plan Document Sec. 5(b), Joint Appendix at 290 (electing arbitration under AAA). Where other procedures are elected, "the alternative procedure shall govern all aspects of the arbitration" rather than the PBGC regulations, with certain inapplicable sections. 29 C.F.R. Sec. 2641.13(b).
 
 
 24
 The district court needs to determine whether 29 C.F.R. Sec. 2641.11 is applied in AAA arbitration. It may be, for example, that the AAA incorporates certain PBGC rules, or that the AAA has an equivalent rule. At any rate, the time periods should be counted according to AAA procedures.[4]
 
 
 25
 If the district court finds that Sec. 2641.11 or its equivalent applies, it should use a functional definition of "non-business day" to determine whether arbitration was timely initiated. The record as it stands does not allow such a determination. In a pre-trial affidavit, Paul Doherty certified that December 25 through December 29 were non-business days for the companies. He also said, "on Friday, December 27, 1991, the businesses operated with a skeleton crew," and called it "essentially" a non-business day. He stated that the first business day following December 25 for Richard St. Pierre was December 30, and for himself and Saddle Ridge Associates was January 2, 1992. In the motion for reconsideration, Doherty certified by affidavit that December 24 was also a non-business day for himself, Richard St. Pierre, and the companies.[5]
 
 
 26
 If December 24, 1991 through January 2, 1992 were non-business days for Doherty and Saddle Ridge (which Doherty solely owned), their 60-day period would run from January 3 to March 2. If December 24 through December 30 were non-business days for St. Pierre, and presumably for all Appellants except Doherty and Saddle Ridge, their 60-day period would begin December 31 and expire February 28, 1992. Thus, a February 27 arbitration request would have been timely.[6]
 
 
 27
 The district court, however, found that "plaintiffs' admission that the entities in question were in fact operating on December 27th, albeit with a 'skeleton crew,' meant that, at the very least, the 120-day period expired on December 27th." This would mean that the sixty-day period for initiating arbitration began December 28, even though December 28 through January 2 were allegedly non-business days for various parties--as the district court observed, 29 C.F.R. Sec. 2641.11 "says nothing to indicate that a period cannot begin to run on a non-business day," and indeed "specifically notes that holidays or non-business days are included in calculation of the time period unless they fall on the last day of the period." Sixty days after December 27 would be February 25, 1992, so the court held the February 27 initiation of arbitration untimely.
 
 
 28
 We believe there were insufficient facts to determine whether the "skeleton crew" of December 27 made it a non-business day for Appellants. The term "non-business day" appears only in the MPPAA regulations, not in the statute itself, and is undefined. There was no explanation or comment on the term when the regulations were published in the Federal Register. 48 Fed.Reg. 31251 (1983); 50 Fed.Reg. 34679 (1985). We think the term must be defined functionally. A day on which only janitorial and security staff were on a business premises would hardly be a business day; yet this might be the "skeleton crew" to which Doherty referred. More generally, a non-business day, for the purposes of 29 C.F.R. Sec. 2641.11, is one on which the party is not engaging in its normal business activities, such as receiving or placing orders for goods and services, managing operations in progress outside the office, or making financial transactions. Obviously, an enterprise may be open for business without the presence of all of its employees, or even all its management; what is required is that there be enough people working to allow the enterprise to function for its primary purposes. This rule is, of course, subject to good faith limitations. A party would not be permitted, for example, to avoid final determination of its withdrawal liability simply by closing down its business.
 
 
 29
 Viewing "[i]nferences to be drawn from the underlying facts contained in the evidential sources submitted to the trial court ... in the light most favorable to the party opposing the motion," Goodman, 534 F.2d at 573, we cannot say as a matter of law that December 27 was a business day. If in fact the PBGC rule regarding non-business days applies, more evidence is required to learn what transpired when the businesses "operated with a skeleton crew," and what Doherty meant when he said December 27 was "essentially" a non-business day.
 
 VI.
 
 30
 Appellants alternatively argue that, if they missed the deadline for initiating arbitration, the deadline should be equitably tolled so that their filing would be valid. They argue that the illness and death of their attorney, Allan Klinger, during the winter of 1991-1992, led to their mistaken filing in federal court and their tardy demand for arbitration.
 
 
 31
 Federal statutes of limitations are generally subject to equitable tolling, Irwin v. Department of Veterans Affairs, 498 U.S. 89, 95-96, 111 S.Ct. 453, 457-58, 112 L.Ed.2d 435 (1990); Holmberg v. Armbrecht, 327 U.S. 392, 397, 66 S.Ct. 582, 585, 90 L.Ed. 743 (1946), and this applies to the MPPAA's arbitration time limits, Slotky, 956 F.2d at 1376; accord Bowers, 901 F.2d at 264.[7]
 
 
 32
 We have stated that equitable tolling may be appropriate at least where "the defendant has actively misled the plaintiff respecting the cause of action," "the plaintiff has in some extraordinary way been prevented from asserting his rights," or "the plaintiff has raised the precise statutory claim in issue but has mistakenly done so in the wrong forum." School Dist. of Allentown v. Marshall, 657 F.2d 16, 20 (3d Cir.1981) (quoting Smith v. American President Lines, Ltd., 571 F.2d 102, 109 (2d Cir.1978)). To fall into the third category, a party's claim, though filed in the wrong forum, must nevertheless be timely. Id. One district court has applied these criteria to a request for equitable tolling of the MPPAA arbitration deadlines. Teamsters Pension Trust Fund v. Laidlaw Indus., 745 F.Supp. 1016, 1026-28 (D.Del.1990); see also Flying Tiger Line, Inc. v. Central States, S.E. & S.W. Areas Pension Fund, 659 F.Supp. 13, 18-19 (D.Del.1986) (tolling arbitration filing deadline while employer brought court action regarding its withdrawal liability), aff'd on other grounds, 830 F.2d 1241 (3d Cir.1987). We look to these criteria for guidance in applying the broader principle that "a person is not required to sue [or arbitrate] within the statutory period if he cannot in the circumstances reasonably be expected to do so." Slotky, 956 F.2d at 1376.
 
 
 33
 We cannot agree with the district court that the second and third criteria are "patently inapplicable" in this situation. We note the Slotky court suggested tolling would be appropriate in a similar situation:
 
 
 34
 We suppose that if [Appellee] had had a disabling stroke the day the pension plan gave notice ... and it took more than 90 days for his family to find someone to handle his business affairs, he would not have forfeited all right to contest what might be an outlandish [withdrawal liability] assessment.
 
 
 35
 Id. at 1376.
 
 
 36
 Furthermore, this situation may involve a mistaken filing in the wrong forum of the sort contemplated by the third criterion. Klinger's decision to file a lawsuit rather than to initiate arbitration mistakenly raised Appellants' claims in district court rather than arbitration.[8] The suit was filed February 19, 1992, within the time limit for the initiation of arbitration. We do not think the third criterion is inapplicable merely because the choice of forum was, as the district court said, a "deliberate decision by an attorney who had experience in handling these cases." A decision may be deliberate and yet mistaken, and this is especially plausible where it is made by a person in very poor health. Klinger was allegedly unable to work in his office beginning in mid-December 1991 and was in his home or the hospital until his death in March 1992. The district court seemed to acknowledge that Klinger's decisionmaking ability was probably impaired when it criticized Klinger's law firm for not overseeing his work. Nor do we think a lawyer's mistake is necessarily unexcusable because, as the district court noted, his firm failed to correct it. The third criterion refers to a party's mistake, and we think this comprehends mistakes made by law firms as well as lawyers on behalf of the party.
 
 
 37
 We do not hold that any poor choice by a lawyer or law firm that lands a party in the wrong forum merits equitable tolling. However, some mistakes in extraordinary circumstances merit forbearance, and this--a filing in the wrong forum by a lawyer and law firm under the extreme duress caused by the illness and death of the lawyer during the proceedings--may be such a mistake. We leave the decision to the discretion of the district court, merely directing it to reevaluate in light of Slotky and our discussion.
 
 VII.
 
 38
 For the reasons stated above, we will vacate the judgment of the district court and remand for further proceedings in accord with this opinion.
 
 SUR PETITION FOR PANEL REHEARING
 March 17, 1994
 
 39
 Present: SCIRICA, ALITO and SEITZ, Circuit Judges.
 
 
 40
 After consideration of the petition for panel rehearing filed by appellee in the above-entitled case, it is
 
 
 41
 ORDERED that the petition for panel rehearing is GRANTED solely to correct the asserted factual errors.
 
 
 
 [1]
 The court also denied Appellants' cross-motion for an order declaring their demand for arbitration timely, and denied Appellees' motion to enjoin arbitration as moot
 
 
 [2]
 Appellants first mentioned these unrelated corporations in their motion for reconsideration; their original complaints simply claimed the assessment was too high. Whether this new allegation was properly raised on a motion for reconsideration does not matter, because we hold that the new complaint boils down to the same thing as the old: an assertion that Appellants' withdrawal liability assessment was miscalculated
 
 
 [3]
 ERISA incorporates Internal Revenue Code standards for determining whether two related corporations are within a controlled group and therefore deemed a single employer. IUE AFL-CIO Pension Fund v. Barker & Williamson, Inc., 788 F.2d 118, 123 (3d Cir.1986); 29 U.S.C. Sec. 1301(b). Two corporations are a brother-sister controlled group under 26 U.S.C. Sec. 1563(a)(2) where five or fewer persons own at least 80% of the voting stock or share value of each corporation, and the same persons own more than 50% of the voting stock or share value, taking into account each person's interest only to the degree of identical stock ownership in each corporation. IUE, 788 F.2d at 123; 26 U.S.C. Sec. 1563(a)(2) (1988)
 
 
 [4]
 Although we employ the arbitrator's rules, it is for the court, not the arbitrator, to determine whether the initiation of arbitration is timely. We say this because 29 U.S.C. Sec. 1401(a)(1) sets forth the time limits to initiate arbitration, which are statutory limits on the right to arbitrate. The MPPAA prescribes arbitration only for a dispute "concerning a determination made under sections 1381 through 1399 of [Title 29]," and the statutory time limits for arbitration do not appear in these sections
 We note there is a line of cases addressing the question of who should determine timeliness of demands for arbitration under private arbitration agreements. See PaineWebber Inc. v. Hartmann, 921 F.2d 507, 511 (3d Cir.1990) (district court, not arbitrator, should determine the timeliness of a demand for arbitration where parties had agreed to "substantively limit their obligation to arbitrate in a temporal sense."); National Iranian Oil Co. v. Mapco Int'l, Inc., 983 F.2d 485, 490-92 (3d Cir.1992) (district court determines whether a petition to compel arbitration under the Arbitration Act is timely, but commenting that arbitrator determines timeliness of demand for arbitration with certain exceptions, citing PaineWebber Inc.).
 We do not think these cases control here, however. They deal with arbitration requirements fixed in contract, under which parties could agree on the substantive scope of the arbitrator's power. In the MPPAA, Congress set statutory limits to the initiation of arbitration, and timeliness under such limitations constitutes a threshold requirement for arbitrability.
 We note that courts that have allowed equitable tolling of the arbitration deadline, Central States, S.E. & S.W. Areas Pension Fund v. Slotky, 956 F.2d 1369, 1376 (7th Cir.1992); Bowers, 901 F.2d at 264, and courts that have found equitable tolling impermissible, McDonald v. Centra, Inc., 946 F.2d 1059, 1064-65 (4th Cir.1991), cert. denied, --- U.S. ----, 112 S.Ct. 2325, 119 L.Ed.2d 244 (1992), have uniformly accepted the task of determining timeliness, rather than passing it on to the arbitrator.
 
 
 [5]
 Appellants explained at oral argument that they did not allege this fact in the original pleadings because they mistakenly thought December 25 was the day on which the 120-day period would end, and therefore the status of December 24 was irrelevant
 
 
 [6]
 We cannot agree with the district court's holding that the February 27 request for arbitration could not properly initiate arbitration because the filing fee was not included. Whether or not a request for arbitration without the fee initiates arbitration under AAA rules is a question for the AAA to decide. The MPPAA itself does not define what it is to "initiate arbitration," and does not require a filing fee to be submitted with a request for arbitration. (We are mindful that PBGC rules delineate the establishment of timeliness, 29 C.F.R. Sec. 2641.2(c), but this regulation does not apply when alternate arbitration procedures are applied, id. Sec. 2641.13(b).)
 From the record and oral argument it appears that the AAA was prepared to begin arbitration were it not for the district court ruling. Accepting a timely request to arbitrate despite the tardiness of the filing fee would accord with our own procedure regarding notices of appeal to the district court, for it is "clear that the filing fee requirement cannot operate to render untimely a notice of appeal that is timely received in the Clerk's office." Gould v. Members of the N.J. Div. of Water Policy & Supply, 555 F.2d 340, 341 (3d Cir.1977); accord Parissi v. Telechron, Inc., 349 U.S. 46, 47, 75 S.Ct. 577, 577, 99 L.Ed. 867 (1955) (per curiam). However, we leave this decision to the arbitrators.
 
 
 [7]
 We acknowledge that the Fourth Circuit has rejected, and the Seventh Circuit has narrowed somewhat, the application of equitable tolling to the MPPAA arbitration deadlines. The Fourth Circuit recently rejected a request by an employer to equitably toll the arbitration deadline, despite the fact that the liability was being contested in the employer's bankruptcy proceeding where the pension fund had filed a proof of claim. McDonald, 946 F.2d at 1064-65. But see Republic Indus. v. Teamsters Joint Council No. 83 Pension Fund, 718 F.2d 628, 644 (4th Cir.1983), cert. denied, 467 U.S. 1259, 104 S.Ct. 3553, 82 L.Ed.2d 855 (1984) (allowing equitable tolling where an employer had brought a non-frivolous constitutional challenge to the MPPAA on an issue not previously decided)
 In Slotky, the Seventh Circuit denied equitable tolling of the arbitration deadline to an employer that had been sued for withdrawal liability. The court read "narrowly" past cases granting equitable tolling under the MPPAA as probably "transitional decisions in which uncertainties about the law made judges hesitate to penalize litigants for having made questionable procedural choices" of fora. 956 F.2d at 1377. But the court also distinguished those cases, in which the employers had brought actions in other fora, from the instant case in which the employer "waited until he was sued--having till then emitted nary a peep to suggest that he was contesting the assessment of withdrawal liability." Id. And as we describe infra, the court also speculated that equitable tolling would be appropriate where illness prevented a party from timely contesting withdrawal liability. Id. at 1376.
 Our caselaw suggests excusing a mistake where a party has filed its action timely in the wrong forum rather than resting on its rights. Thus, the opposing party has notice that it is being challenged. And while we recognize that, as the Fourth Circuit said in McDonald, 946 F.2d at 1065, equitable tolling slows the speedy proceedings that the MPPAA seeks to achieve, there are cases--and this, as we describe below, may be one of them--where the delay will be small in comparison to the justice worked by giving a party that has made an excusable mistake its day in court.
 
 
 [8]
 We note that Appellants' situation was particularly confusing because one of their claims, that regarding Doherty and St. Pierre's status as alter egos, was in fact properly brought in district court. See supra Part IV