258

John BOWERS, Donald Carson, James G. Costello, M. Brian Maher, Anthony Pimpinella, Anthony J. Tozzoli, Peter F. Vickers, as Trustees for and on behalf of the NYSA–ILA Pension Trust Fund, Plaintiffs–Appellees, Cross–Appellants,

v.

TRANSPORTACION MARITIMA MEXI-CANA, S.A., Defendant–Appellant, Cross–Appellee.

Nos. 533, 632, Dockets 89–7772 to 89–7776.

United States Court of Appeals, Second Circuit.

Argued Dec. 14, 1989.

Decided April 9, 1990.

counsel), for plaintiffs-appellees, cross-appellants.

Kenneth H. Volk (Geoffrey J. Ginos, W. Cameron Beard, Burlingham, Underwood & Lord, New York City, of counsel), for defendant-appellant, cross-appellee.

Before VAN GRAAFEILAND, PIERCE, and MINER, Circuit Judges.

MINER, Circuit Judge:

Transportacion Maritima Mexicana, S.A. ("TMM") appeals from a judgment entered June 29, 1989, in the United States District Court for the Southern District of New York (Owen, *J.*), finding that TMM was an "employer" subject to withdrawal liability under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001–1461 (1982 & Supp. V 1987), as amended by the Multiemployer Pension Plan Amendments Act ("MPPAA"), 29 U.S.C. §§ 1381–1453 (1982 & Supp. V 1987). The district court awarded the NYSA–ILA Pension Trust Fund (the "Fund") damages and interest for withdrawal liability payments it had demanded from the due date of the first installment until the date of judgment, directed arbitration of the total amount due, and ordered that future quarterly withdrawal liability payments be made by TMM until the total amount due is determined through arbitration.

On appeal, TMM challenges the district court's finding that it was an employer subject to withdrawal liability under the MPPAA, and asserts that the court erred when it entered judgment in an amount calculated from the due date of the first installment, rather than from the date TMM received notice of its withdrawal liability. The Fund cross-appeals, asserting that TMM waived its right to arbitrate the dispute, and that the district court erred in deciding that the Fund's motion for liquidated damages, attorney's fees, and costs was premature. The district court denied TMM's motion to stay arbitration pending this appeal.

Kevin Marrinan (Thomas W. Gleason, Ernest L. Mathews, Jr., and C. Peter Lambos, Donato Caruso, Nicholas G. Maglaras, Lambos & Giardino, New York City, of

For the reasons that follow, we affirm the judgment of the district court insofar as it found that TMM was an employer

subject to withdrawal liability, modify the judgment to the extent it required arbitration, and remand to the district court for the limited purpose of determining the amount of TMM's liability.

## BACKGROUND

TMM was a steamship carrier whose vessels called at the Port of New York (the "Port") beginning in 1976 and continuing until December 4, 1986. In 1979 TMM applied through its agent to become a "voting member" of the New York Shipping Association, Inc. ("NYSA"), the certified bargaining unit for steamship carriers, stevedores, and other employers of longshoremen in the Port. The NYSA accepted TMM as an "associate member" on March 22, 1979, in a letter stating that "Our Board of Directors requires a written affirmation that you will be bound by our Association's By–Laws." Although TMM denies ever affirming the NYSA's By–Laws in writing, it certified in its signed application for membership "that, if admitted to membership, our company will conform with the By–Laws of the New York Shipping Association, Inc." TMM paid annual membership dues to the NYSA for the years 1979 to 1987.

The NYSA's By–Laws provided that after its Board approved an agreement with the International Longshoremen's Association ("ILA"), the certified collective bargaining unit for Port workers, and that agreement was ratified by the NYSA's voting members, all voting and associate members were parties to, and bound by, the agreement. Any member could refuse to be bound by notifying the NYSA in writing, in which case the member would be considered to have withdrawn from the NYSA.

Longshoremen who work on carriers' ships in the Port are employees of stevedores and not the steamship carriers. Pension and other employee benefits, however, are paid for by the steamship carriers through various multiemployer agreements. In 1980 the NYSA and the ILA negotiated the General Cargo Agreement ("GCA"), which provided in relevant part that the NYSA would impose a tonnage assessment on its member carriers, portions of which would be paid to the Fund to provide pension and other employee benefits mandated by various collective bargaining agreements. In recognition of the fact that longshoremen perform work for NYSA members, as well as for stevedores and non-NYSA members, the GCA was executed "by New York Shipping Association, Inc. for and on behalf of its employer-members and by each contracting stevedore and vessel carrier who directly or indirectly utilizes the services of any employees covered by this agreement." Stevedores could not contract with a carrier that refused to sign the GCA.

TMM never objected to the GCA, nor did it withdraw from the NYSA, as provided in the NYSA By–Laws. Between 1981 and 1985 TMM paid over $1.4 million in tonnage assessments, of which $366,660.60 went to the Fund for pension benefits. The Fund sent TMM a letter in 1982 giving notice of its potential withdrawal liability under the MPPAA as of 1980, which would become due and payable in the event it ceased operations at the Port.

TMM ships stopped calling at the Port on December 4, 1986. The Fund determined that TMM had withdrawn from the GCA and related multiemployer pension plans and, on September 17, 1987, demanded withdrawal liability payments in quarterly installments of $38,851.50. Notice of the demand was mailed to Kerr Steamship Co., which had been TMM's agent since September 1, 1983, and to an address in Mexico which the Fund now concedes was not TMM's correct address. When the first scheduled payment was not made on the due date, a second notice was sent to the same two addresses stating that the Fund would declare a default and the full payment with interest would become due immediately if the installment was not paid within 60 days. TMM did not make any payment, nor did it seek review of the assessment or arbitration of the amount demanded.

Plaintiffs–appellees / cross–appellants, trustees of the Fund, commenced this ac-

tion to recover $591,927, the full amount of TMM's purported withdrawal liability pursuant to the MPPAA, on the ground that TMM's failure either to pay or to seek review and arbitration constituted a default accelerating all installments due. *See* 29 U.S.C. § 1399(c)(5). The complaint was served on March 15, 1988, and TMM served its answer on April 8, 1988, asserting as affirmative defenses the lack of subject matter jurisdiction and the failure to state a claim upon which relief can be granted. On May 5, 1988, the Fund moved for summary judgment. TMM opposed the motion on the ground that the complaint in this action was the first notice it received of withdrawal liability, and therefore, that there had been no default. TMM asserted also that it was not an employer within the meaning of the MPPAA, and was not subject to withdrawal liability.

The district court determined that TMM was an employer subject to withdrawal liability under the MPPAA. The court found, however, that TMM had not waived its right to arbitrate the amount of the withdrawal liability, finding that a factual question existed as to when TMM received notice of withdrawal liability. The court, therefore, denied summary judgment and directed arbitration on the issues of TMM's waiver of arbitration and the amount of withdrawal liability. The court later amended its order, directing TMM to pay the Fund all interim installments from the due date of the first installment to the date of judgment in the amount of $271,820.50 plus interest of $21,769.89, and that TMM pay the balance of its assessed withdrawal liability in quarterly installments subject to adjustment when the total amount due was determined through arbitration. The court denied TMM's motion to stay arbitration pending this appeal and entered judgment.

## DISCUSSION

The MPPAA requires an employer who is obligated to contribute to a multiemployer pension plan to pay its proportionate share of the plan's unfunded vested benefits upon withdrawal from the plan. 29 U.S.C. § 1381(a). The plan sponsor must notify the employer of the amount of its withdrawal liability, establish a schedule for payment, and demand payment in accordance with the schedule. *Id.* § 1399(b)(1). If the employer disputes the amount of withdrawal liability, it must request a review within 90 days of the demand. *Id.* § 1399(b)(2)(A). If the parties cannot resolve the dispute, arbitration is mandatory, and it must be initiated within 60 days after the earlier of either (1) notification by the plan sponsor of the result of the requested review or (2) 120 days of the date review was requested. *Id.* § 1401(a)(1). Notwithstanding any request for review or demand of arbitration, the uncured failure to make overdue payments constitutes a default. *Id.* § 1399(c)(5); Pension Benefit Guar. Corp. Reg. on Notice and Collection of Withdrawal Liability, 29 C.F.R. § 2644.2 (1988).

■ The issue whether TMM was an "employer" within the meaning of the MPPAA is properly for the courts, not an arbitrator, to determine. *Korea Shipping Corp. v. New York Shipping Ass'n–Int'l Longshoremen's Ass'n Pension Trust Fund,* 880 F.2d 1531, 1536 (2d Cir.1989). Arbitration is prescribed only for disputes "between an *employer* and the plan sponsor." 29 U.S.C. § 1401(a)(1) (emphasis added). Thus, the MPPAA does not preclude judicial resolution of the threshold legal issue whether TMM is an employer within the meaning of the statute. *See Park South Hotel Corp. v. New York Hotel Trades Council,* 851 F.2d 578, 582 (2d Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 493, 102 L.Ed.2d 530 (1988); *T.I.M.E.–DC, Inc. v. Management–Labor Welfare & Pension Funds, of Local 1730,* 756 F.2d 939, 945 (2d Cir.1985).

■ The term "employer" in the MPPAA "means 'a person who is obligated to contribute to a plan either as a direct employer or in the interest of an employer of the plan's participants.'" *Korea Shipping,* 880 F.2d at 1537 (quoting district court, 663 F.Supp. 766, 770 (S.D.N.Y.1987) (Weinfeld, *J.*)). TMM admits that it made tonnage assessment payments of over $1.4 million, of which $366,660.60 went to the

Fund for pension benefits in the interest of stevedores who were the direct employers of longshoremen. It is of no consequence that TMM made those payments through the NYSA. " 'The mere existence of an intermediary used to collect and distribute the separate contributions of its members does not remove those members from the status of contributors to the plan.' " *Id.* at 1539–40 (quoting district court, 663 F.Supp. at 771). If the payments were made pursuant to contractual obligations, TMM was an "employer" subject to withdrawal liability.

TMM asserts that it had no contractual obligation because it did not actually sign the GCA. Had TMM actually signed the GCA, there is no question that it would have been obligated to make tonnage assessment payments and would be considered an employer subject to withdrawal liability. *Id.* at 1534 (steamship carriers were employers subject to withdrawal liability when they were "parties to the GCA not only by reason of their membership in the NYSA, but also as direct signatories"). Contrary to TMM's assertions, however, it did not have to sign the GCA to be obligated to make the tonnage assessment payments. *See O'Hare v. General Marine Transp. Corp.*, 740 F.2d 160, 168 (2d Cir. 1984), *cert. denied*, 469 U.S. 1212, 105 S.Ct. 1181, 84 L.Ed.2d 329 (1985). The NYSA executed the GCA "for and on behalf of its employer-members." The NYSA By–Laws provided that such an agreement was binding on all voting and associate members unless they refused to be bound in writing, in which case they would be considered to have withdrawn from the NYSA. TMM never gave such written notice, nor did it withdraw from the NYSA until after it ceased operations in the Port.

TMM contends that since it applied to the NYSA for voting membership, and the NYSA accepted it as an associate member with the condition that TMM affirm the By–Laws, the NYSA's acceptance of its application for membership was a mere counter-offer. Even if it was a counter-offer, TMM accepted it by paying annual dues and all tonnage assessments, and by remaining silent on the question of ratification of the By–Laws. *See Restate-ment (Second) of Contracts* § 69 (1981). TMM also had affirmed the By–Laws in writing when it signed the application for membership, albeit before such signed affirmation was demanded. Under these circumstances, an additional written affirmation of the By–Laws would have been superfluous. TMM obtained all the rights of a NYSA member, significantly the right to operate in the Port under NYSA–ILA agreements, and could have avoided its obligations under the NYSA By–Laws and the GCA by repudiating the GCA and NYSA membership, a step it failed to take.

Finally, TMM asserts that its "unequivocal intention" to be bound by agreements negotiated by the NYSA was not established by its mere membership in the NYSA. *See International Longshoreman's Ass'n v. Delta S.S. Lines, Inc.*, 832 F.2d 759, 763 (2d Cir.1987). When an employer's intention to join a multiemployer agreement is equivocal, the employer is free to withdraw from negotiations or to reject the agreement. *Id.* TMM did neither, and it is bound as a NYSA member by the agreements negotiated in its behalf. Accordingly, we affirm the judgment of the district court insofar as it found TMM to be an employer subject to withdrawal liability.

■ Unlike the issue whether TMM is an employer within the meaning of the MPPAA, "any dispute" concerning the notice or amount of withdrawal liability "shall be resolved through arbitration." 29 U.S.C. § 1401(a)(1). This court has suggested that there may be a point at which "an employer's connection with a fund would be so attenuated as to support a defense that it was not an 'employer' within the meaning of § 1401 and thus not obligated to submit to arbitration." *ILGWU National Retirement Fund v. Levy Bros. Frocks, Inc.*, 846 F.2d 879, 886 (2d Cir.1988). Having found that TMM had actual notice of its potential withdrawal liability in 1982, that it accepted the NYSA's execution of the GCA in its behalf, and that it paid all membership dues and tonnage assessments, we hold that TMM could not "justifiably claim that it is a complete stranger to the Fund, with the claim against it coming out of the blue

from an entity it never heard of or dealt with." *Id.* at 885–86. Thus, TMM was obligated to arbitrate the issues of notice and amount of withdrawal liability.

The Fund asserts in its cross-appeal that TMM waived its right to arbitrate the amount of withdrawal liability by not seeking review and arbitration within the statutory time limits. The district court held that whether TMM received notice, commencing the time period within which it had to seek review and arbitration, was a factual question to be resolved by the arbitrator.[1] The Fund responds that even if a factual question exists concerning its original notice to TMM of withdrawal liability, TMM does not dispute that it received notice when it was served with the complaint in this action on March 15, 1988. Since TMM did not seek review and arbitration within 90 days of receipt of the complaint, and only moved for a stay of arbitration pending appeal after the district court's determination of liability, the Fund contends that a default has occurred. We agree.

The MPPAA statutory scheme has been characterized as a "pay-first-question-later system." *Levy Bros. Frocks*, 846 F.2d at 882. "Congress intended that disputes over withdrawal liability would be resolved quickly, and established a procedural bar for employers who fail to arbitrate disputes over withdrawal liability in a timely manner." *Id.* at 887. Thus, an employer must commence making the demanded payments within 60 days, even if it has sought review and arbitration and that process is pending. 29 U.S.C. § 1401(d). A default may be declared on the sixty-first day after the review and arbitration process has been completed. 29 C.F.R. § 2644.2(c); *see Levy Bros. Frocks*, 846 F.2d at 881–82. When a party pursues its defenses in court, it risks losing the right to arbitrate but several options are available. *IUE AFL–CIO Pension Fund v. Barker & Williamson, Inc.*, 788 F.2d 118, 129 (3d Cir.1986). Among those is a "request that the court enjoin the running of the statutory period for seeking review and arbitration." *Id.*

■ Mere participation in an action does not constitute a waiver of arbitration when an assertion of the right to arbitrate is made in a timely manner. *See, e.g., Seguros Banvenez, S.A. v. S/S Oliver Drescher*, 761 F.2d 855, 862 (2d Cir.1985) (no waiver despite participation in action because party "asserted the right to arbitrate at the very outset"); *Sweater Bee By Banff, Ltd. v. Manhattan Indus., Inc.*, 754 F.2d 457, 461 (2d Cir.) (no waiver despite participation in action "where a party raises arbitration in its answer and moves promptly for a stay"), *cert. denied*, 474 U.S. 819, 106 S.Ct. 68, 88 L.Ed.2d 55 (1985). However, where a party participates in an action until a determination on the merits without raising the right to arbitration, a waiver of that right may be inferred. *See Demsey & Assocs., Inc. v. S.S. Sea Star*, 461 F.2d 1009, 1018 (2d Cir.1972). Here, TMM did not move for a stay of arbitration until after the district court had determined that it was subject to withdrawal liability, eight months after it was served with notice of its withdrawal liability in the form of the complaint.[2]

We need not determine, however, whether the district court erred in finding that TMM did not intend to waive its right to arbitrate the dispute. Assuming TMM did not waive its right to seek arbitration, the dispositive issue is whether it is entitled to arbitration now that the time within which to seek arbitration has expired. TMM as-

---

1. The Federal Arbitration Act, 9 U.S.C. § 15(b) (1988), does not defeat appellate jurisdiction over this cross-appeal, despite the fact that "the effect of the district court's [order is] to stay litigation of these claims." *McCowan v. Dean Witter Reynolds, Inc.*, 889 F.2d 451, 453 (2d Cir.1989); *see also Janneh v. GAF Corp.*, 887 F.2d 432, 436 n. 5 (2d Cir.1989) (orders favoring arbitration over litigation not appealable). Section 15 states that "an appeal may not be taken from an *interlocutory* order" directing arbitration pursuant to an agreement between the parties or staying an action. 9 U.S.C. § 15(b) (emphasis added). Here, we have a final judgment requiring an arbitration mandated by statute.

2. We note also that the obligation to arbitrate "is not dependent upon the [employer's] intention to submit to arbitration, but rather is imposed on the [employer] under MPPAA." *Levy Bros. Frocks*, 846 F.2d at 885. Thus, we cannot say that the doctrine of waiver in the context of private agreements to arbitrate can be applied directly in the context of arbitration mandated by statute. *Id.*

serts that its right to arbitrate was preserved under the doctrine of equitable tolling.

■ The MPPAA review and arbitration time limitation contains no tolling provision, but it is subject to equitable tolling. *Banner Indus. v. Central States, Southeast and Southwest Areas Pension Fund*, 875 F.2d 1285, 1293 (7th Cir.) (citing *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1982)), *cert. denied*, —— U.S. ——, 110 S.Ct. 563, 107 L.Ed.2d 558 (1989). Unlike a finding that TMM did not waive its right to arbitration, which merely preserves an existing right, the equitable tolling doctrine calls for the court to extend the statute of limitations beyond the time of expiration. *See Bornholdt v. Brady*, 869 F.2d 57, 67 (2d Cir.1989). The doctrine was developed to address situations in which fraudulent or other conduct concealed the existence of a claim. *See, e.g., Cerbone v. International Ladies' Garment Workers' Union*, 768 F.2d 45, 48 (2d Cir.1985). Thus, the term equitable tolling

> is not a general term of reference for any one of a variety of situations in which limitations periods are relaxed. Rather, it is an uncomplicated, but rather limited doctrine, which tolls the statute of limitations with regard to federally created causes of action sounding in fraud or federally created causes of action which have been fraudulently concealed, until the fraud or concealment is, or in the exercise of reasonable diligence should have been, discovered.

*Ingenito v. Bermec Corp.*, 441 F.Supp. 525, 553 n. 26 (S.D.N.Y.1977). Even when such concealment exists, the party seeking the benefits of equitable tolling must have acted reasonably to discover the facts and to protect its rights. *See Arneil v. Ramsey*, 550 F.2d 774, 781 (2d Cir.1977).

In *Banner*, the Seventh Circuit held that the district court did not abuse its discretion by tolling the MPPAA 90 day limitation period "because [the employer] moved decisively to present the issue in court within the statutory time period for arbitration." 875 F.2d at 1293. Both the district court and the court of appeals noted, however, that it would have been a different

matter had the employer "'waited until the pension filed a collection against it, and then for the first time tried to assert its defenses in court when it should have proceeded in arbitration.'" *Id.* (citation omitted); *see also Crown Cork & Seal Co. v. Central States Southeast and Southwest Areas Pension Fund*, 881 F.2d 11, 19 (3d Cir.1989); *Barker & Williamson*, 788 F.2d at 129. Accordingly, if the Fund's initial notice of withdrawal liability sent to Kerr Steamship Co. as TMM's agent on September 17, 1987 was sufficient, then TMM is not entitled to the benefit of equitable tolling. Equitable tolling is an issue only if the September 17 notice was ineffective and the first notice of withdrawal liability was the complaint in this action served on March 15, 1988.

■ The burden is on TMM to establish inequitable circumstances warranting an extension of time. *See Miller v. International Tel. & Tel. Corp.*, 755 F.2d 20, 24–25 (2d Cir.), *cert. denied*, 474 U.S. 851, 106 S.Ct. 148, 88 L.Ed.2d 122 (1985). We find no need to remand to the district court on this issue because the record permits only one conclusion. *See Pullman–Standard v. Swint*, 456 U.S. 273, 292, 102 S.Ct. 1781, 1792, 72 L.Ed.2d 66 (1982). TMM did not protect its right to arbitration by moving decisively. *Banner*, 875 F.2d at 1293. Although TMM answered the complaint promptly, it did not move for a stay pending arbitration until the district court issued an order imposing liability eight months after the complaint was served. *Id.* Nor did it make payments in accordance with the schedule set forth by the Fund pending resolution of the dispute. *See* 29 U.S.C. § 1401(d). In the absence of fraud or unfair conduct by the Fund, and in the absence of any affirmative action on the part of TMM to preserve its right to arbitration, we find no inequitable circumstances warranting a judicial extension of the time limitation under the doctrine of equitable tolling. *See Miller*, 755 F.2d at 24; *Katz v. Amos Treat & Co.*, 411 F.2d 1046, 1055 (2d Cir.1969) (Friendly, *J.*). *See generally* 54 C.J.S. *Limitations of Actions* § 86 (1987) (equitable tolling available when party "was in some extraordinary way prevented from asserting his rights").

TMM's failure to pay or to preserve its right to arbitration has resulted in a default. This may seem "a harsh result, but the harshness of the default is largely 'a self-inflicted wound.'" *Levy Bros. Frocks,* 846 F.2d at 887 (quoting *Barker & Williamson,* 788 F.2d at 129).

■ Upon default, the Fund was entitled to require immediate payment of the entire withdrawal liability amount demanded plus interest. 29 U.S.C. § 1399(c)(5); 29 C.F.R. § 2644.2; *see also New York State Teamsters Conference Pension & Retirement Fund v. McNicholas Transp. Co.,* 848 F.2d 20, 23 (2d Cir.1988). We therefore modify the district court's judgment to the extent it directed the parties to arbitrate the issues of notice and the amount of withdrawal liability, and remand for the limited purpose of determining the amount of TMM's liability.

■ Having successfully pursued delinquent payments, the Fund is entitled also to an award of liquidated damages, attorney's fees, and costs. 29 U.S.C. §§ 1145, 1132(g)(2); *see O'Hare,* 740 F.2d at 171; *United Retail & Wholesale Employees v. Yahn & McDonnell, Inc.,* 787 F.2d 128, 135 (3d Cir.1986), *aff'd,* 481 U.S. 735, 107 S.Ct. 2171, 95 L.Ed.2d 692 (1987) (per curiam by an equally divided Court). Finally, TMM contends that the district court erred in calculating withdrawal liability from the due date of the first installment, rather than the date notice was received. Since the Fund has sought, and we have imposed liability on the basis of notice given by the complaint, the district court is directed to calculate the amount of the award from March 15, 1988.

## CONCLUSION

Affirmed as modified. The district court is directed to enter judgment in an amount consistent with this opinion.

PIERCE, Senior Circuit Judge, concurring:

I concur in the result reached by the majority. I write separately to note my disagreement with the majority's assertion that, having ignored the MPPAA's dispute resolution procedures, TMM is entitled to a judicial determination of whether it is an "employer" within the meaning of the MPPAA.

The MPPAA's requirement that *"[a]ny dispute* between an employer and the plan sponsor ... concerning a determination [of withdrawal liability] *shall be resolved through arbitration,"* 29 U.S.C. § 1401(a) (emphasis added), is an exhaustion of remedies requirement. *T.I.M.E.–DC, Inc. v. Management–Labor Welfare & Pension Funds, of Local 1730,* 756 F.2d 939, 945 (2d Cir.1985). While the majority notes cases in which we have excused a failure to exhaust the arbitration remedy, these cases do not establish a *per se* rule that a corporation challenging its alleged status as an "employer" may ignore its obligation to pursue arbitration. Rather, the cases hold that, unless prudential considerations are paramount, disputes such as the present one should be arbitrated.

Thus, in *Park South Hotel Corp. v. New York Hotel Trades Council,* 851 F.2d 578 (2d Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 493, 102 L.Ed.2d 530 (1988), we excused the parties' failure to arbitrate because:

> (1) this case presents no factual issues but only legal questions of statutory interpretation, (2) the parties agreed that arbitration was not required, (3) the suit was filed before the time for invoking arbitration had expired, and (4) judicial economy would not be served by remanding [after a district court ruling on the merits] for arbitration, which almost certainly would be followed by further judicial proceedings.

*Id.* at 582; *see also T.I.M.E.–DC,* 756 F.2d at 945 (excusing failure to arbitrate where (1) case presents no questions of fact or issues of contract interpretation; (2) it is probable that parties would seek judicial review of arbitrator's decision; and (3) issue raised is one which it appears Congress did not contemplate would be resolved in arbitration). By resolving this case without examining such prudential considerations, the majority weakens the MPPAA's arbitration requirement, contrary to established case law.

Thus, in *ILGWU National Retirement Fund v. Levy Bros. Frocks, Inc.,* 846 F.2d

879 (2d Cir.1988), the plaintiff had asserted withdrawal liability and, after the defendant defaulted, brought an action seeking immediate payment of the total due together with interest, liquidated damages, costs and attorneys' fees. In defending this action, the employer asserted, *inter alia*, that it was not "a party to the Fund's multiemployer plan or otherwise obligated to contribute to the Fund and thus it was not obligated under the MPPAA to pay withdrawal liability." *Id.* at 883. In reversing the district court's decision which reached the merits, we held that, under the MPPAA, a defendant must arbitrate its defense that it was not obligated to contribute to the Fund, "in order to preserve that defense for ultimate judicial review." *Id.* at 880.

In *Levy Bros. Frocks*, we noted that while the arbitration requirement "does not always prevent a party from seeking declaratory and/or injunctive relief against the imposition of withdrawal liability, the instances in which such relief is appropriate are likely to be rare." *Id.* at 886. While recognizing that arbitration is not required in certain cases, the court, in *Levy Bros. Frocks*, noted that the question of whether an employer was "obligated to contribute" to a Fund—the very issue which TMM raises herein—is essentially factual and does not implicate *T.I.M.E.-DC*'s rationale for excusing the exhaustion requirement. *Id.* Moreover, *Levy Bros. Frocks* explains that:

> Congress intended that disputes over withdrawal liability would be resolved quickly, and established a procedural bar for employers who fail to arbitrate disputes over withdrawal liability in a timely manner. If a party wishes to seek judicial resolution of its dispute without first submitting to arbitration it should seek declaratory and/or injunctive relief against the imposition of withdrawal liability before the time period to initiate arbitration expires. The failure to seek such relief on a timely basis may, in some instances, lead to a harsh result, but the harshness of the default is largely "a self-inflicted wound."

*Id.* at 887 (citations omitted) (quoting *IUE AFL–CIO Pension Fund v. Barker & Wil-*

*liamson, Inc.*, 788 F.2d 118, 129 (3d Cir. 1986)).

Finally, while *Levy Bros. Frocks* recognizes that an employer's relationship with a multiemployer plan could be so attenuated as to warrant a finding that it was not an "employer" and thus not obligated to arbitrate pursuant to § 1401, as the majority explains, in this case, TMM cannot justifiably claim that it is "a complete stranger to the Fund." *Id.* at 885–86.

While TMM herein did not bring an action for declaratory or injunctive relief, if, in fact, TMM was not aware that the Fund was asserting withdrawal liability until it was served with the summons and complaint, there would be some basis for excusing its failure to arbitrate. However, the Fund seeks to have liability imposed on the basis of the notice given in the complaint which was served upon TMM and, since I agree with the majority that TMM is no longer entitled to pursue arbitration, I do not see the need to remand for a resolution of this factual question.