NEW YORK STATE TEAMSTERS CONFERENCE PENSION AND RETIREMENT FUND, by its Trustees, John Bulgaro, Gary Staring, Brian R. Masterson, Daniel W. Schmidt, Michael S. Scalzo, Sr., Thomas K. Wotring, and J. Dawson Cunningham, Plaintiff–Counter–Defendant–Appellant,

v.

EXPRESS SERVICES, INC., and S & P Trucking, LLC, Defendants–Counter–Claimants–Appellees,

Doren Avenue Associates, Inc., Defendant.

Docket No. 04–3237–CV.

United States Court of Appeals, Second Circuit.

Argued June 6, 2005.

Decided Oct. 12, 2005.

Vincent M. DeBella, Paravati, Karl, Green & DeBella, Utica, NY, for Plaintiff–Appellant.

Ronald L. Kahn, Ulmer & Berne LLP, Cleveland, OH (Daniel J. Moore, Harris Beach LLP, Pittsford, NY, on the brief), for Defendants–Appellees.

Before: WALKER, Chief Judge, JACOBS and LEVAL, Circuit Judges.

JOHN M. WALKER, JR., Chief Judge:

Plaintiff-appellant New York State Teamsters Conference Pension and Retirement Fund ("the Fund") appeals from a judgment of the United States District Court for the Northern District of New York (David N. Hurd, *Judge*), granting defendants-appellees' motion for summary judgment. *N.Y. State Teamsters Conference Pension & Ret. Fund v. Doren Ave. Assocs., Inc.* ("*Teamsters*"), 321 F.Supp.2d 435 (N.D.N.Y.2004). The Fund claims that the district court erred when it decided itself, rather than submitting to the arbitrator, the issue of whether defendants were "employers" within the meaning of the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. § 1381 *et seq*. The Fund argues in the alternative that even if the issue was properly before the district court, the court erred in concluding that defendants were not "employers" under the MPPAA.

## BACKGROUND

The Fund is a multiemployer benefit plan governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, as amended by the MPPAA. Howard's Express, Inc. ("Howard's"), which is not a party to this litigation, was an employer participating in the Fund. That participation ended when Howard's entered bankruptcy in March 2003. As a result of the bankruptcy, Howard's was deemed to have completely withdrawn from the plan, pursuant to 29 U.S.C. § 1383, and to be subject, pursuant to 29 U.S.C. § 1381, to withdrawal liability in roughly "the amount determined ... to be the allocable amount of unfunded vested benefits." 29 U.S.C. § 1381(b)(1); *see also Park South Hotel Corp. v. N.Y. Hotel Trades Council and Hotel Ass'n of N.Y. City*, 851 F.2d 578, 580 (2d Cir.1988) (defining unfunded vested benefits).

In determining Howard's withdrawal liability, which totaled approximately $12 million, but which Howard's was presumably unable to pay, the Fund decided to pursue defendants-appellees Express Services, LLC ("Express") and S & P Trucking, LLP ("S & P"), as well as defendant Doren Avenue Associates, Inc. ("Doren"), on the theory that they were jointly liable for Howard's withdrawal liability. The Fund came to this conclusion because the owners and managers of these three entities were the same as, immediately related to, or close associates of the owners and managers of Howard's. Specifically, Philip Boncaro, Sr. ("Philip Sr.") and Samuel Boncaro, Jr. ("Samuel Sr.") held all of the voting shares in Howard's and most of the nonvoting shares; their sons, Philip Boncaro, Jr. ("Philip Jr.") and Samuel Boncaro, III ("Samuel Jr.") owned 3.4% of the nonvoting shares. *Teamsters*, 321 F.Supp.2d at 438. Express was owned by all four of the Boncaros, as well as Edward Haddad. *Id.* at 438–39. S & P was owned by Philip Jr. and Samuel Jr.[1] *Id.* at 439. Howard's, Express, and S & P were, during the relevant period, engaged in related lines of business within the freight transportation industry.[2]

---

1. Doren, which was owned by Philip Sr. and Samuel Sr., did not answer the complaint, and the district court granted a default judgment against it. *Teamsters*, 321 F.Supp.2d at 437 n. 1. Doren is not a party to this appeal.

2. Prior to filing for bankruptcy, Howard's was a freight carrier in New York. Express was a freight brokerage in New York, which matched loads of freight with carriers for pickup and delivery. *Teamsters*, 321 F.Supp.2d at 438. S & P was a cartage company, which picked up and delivered cargo in eastern Pennsylvania. *Id.* at 439.

The Fund sent each appellee a letter ("the liability notice") on June 9, 2003, formally notifying them of their liability, as required by 29 U.S.C. §§ 1382(2) and 1391(b)(1)(A), and demanding payment commencing August 9, 2003. The letter stated that Express and S & P were "responsible for [Howard's] withdrawal liability" because they were "affiliated with" Howard's. When Express and S & P failed to respond or to make payment, the Fund sent them a second letter ("the default notice"), stating that they were subject to default judgment if they did not cure their failure to pay within sixty days.[3]

Soon after, appellees submitted a timely request for review under 29 U.S.C. § 1399(b)(2), setting forth legal and factual arguments as to why they were not responsible for Howard's withdrawal liability. The Fund did not immediately respond. Instead, believing that appellees were required to make interim liability payments under the MPPAA's "pay-first-question-later" regime, the Fund filed a collection action in federal court in November 2003. See 29 U.S.C. §§ 1399(c)(2) (requiring employers who receive a liability notice to make interim payments, even if they dispute liability pending review or arbitration); see also id. § 1401(d) (providing for interim payments notwithstanding arbitration); Bowers v. Transportacion Maritima, Mexicana, S.A., 901 F.2d 258, 263 (2d Cir.1990) (describing the pay-first-question-later regime).

In its complaint, the Fund claimed that appellees were "under common control" with Howard's, and thus could be held responsible for its withdrawal liability, under 29 U.S.C. § 1301(b). Alternatively, the Fund alleged that appellees were liable as alter egos of Howard's, a claim that the Fund subsequently bolstered by asserting that appellees had engaged in transactions to "evade or avoid withdrawal liability," as defined by 29 U.S.C. § 1392(c).

Over the next few months, the parties filed a number of motions and cross-motions, as set forth in the district court's opinion. See Teamsters, 321 F.Supp.2d at 443–44. In January 2004, Express and S & P filed a timely demand for arbitration. See 29 U.S.C. § 1401. Throughout the district-court proceedings, the Fund maintained that whether or not appellees were employers within the meaning of the MPPAA was a matter for the arbitrator, not the court. See id. at 441, 444. Pending arbitration, the Fund argued, appellees were required to make interim payments under the MPPAA's pay-first-question-later regime. Id. at 440–41. In response to appellees' motion for a preliminary injunction to halt the collection action, the Fund cross-moved for summary judgment, seeking an order directing appellees to make the demanded interim payments pending arbitration. Id. at 437. The Fund's summary judgment motion was made without the benefit of discovery on the merits. Id. at 446. Express and S & P, after some procedural missteps, see id. at 443–44, eventually took the position that employer status was a matter for the court, notwithstanding MPPAA's arbitration provisions, id. at 441, and cross-moved for summary judgment on the employer-status issue, id. at 444.

The district court agreed with Express and S & P. It concluded first that employer status was a matter for the court, relying primarily on this court's decision in

---

**3.** The MPPAA defines default as "the failure ... to make, when due, any payment under this section, if the failure is not cured within 60 days after the employer receives written notification from the plan sponsor of such failure." 29 U.S.C. § 1399(c)(5)(A). If an employer fails to pay after receiving a default notice, the plan sponsor may require immediate payment of the outstanding liability. Id. § 1399(c)(5).

*Bowers. Id.* at 441–42. It then proceeded to the merits and found that the Fund had failed to raise a triable issue of material fact with respect to either its common-control or its alter-ego claims. *Id.* at 444–51. It therefore granted appellees' cross-motion for summary judgment and terminated the pending arbitration proceedings. *Id.* at 451.

This appeal followed.

## DISCUSSION

The Fund argues (1) that the district court erred in deciding the employer-status question rather than submitting it to the arbitrator, and (2) that even if the district court correctly assumed jurisdiction over the employer-status question, it erred on the merits. We review the district court's grant of summary judgment *de novo,* construing evidence in the light most favorable to the non-moving party. *E.g., Tenenbaum v. Williams,* 193 F.3d 581, 593 (2d Cir.1999). Summary judgment is appropriate where "there is no genuine issue as to any material fact," Fed.R.Civ.P. 56(c), and where, accordingly, "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

### I. *Employer–Status Determination*

The primary issue before us is whether the district court erred in deciding itself, rather than submitting to arbitration, the issue of appellees' employer status under the MPPAA. The MPPAA provides that "[a]ny dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under sections 1381 through 1399 of this title shall be resolved through arbitration." 29 U.S.C. § 1401(a). It also requires employers to make interim payments pending arbitration of disputes arising under the enumerated sections. *Id.* §§ 1399(c)(2), 1401(d). Relying on these provisions, the Fund contends (1) that all disputes over withdrawal liability—even disputes over whether a defendant is an "employer" subject to withdrawal liability—must be arbitrated; and (2) that pending arbitration of the employer-status question, the defendant must pay. Appellees, quoting the district court, assert that subjecting employer-status determinations to arbitration and requiring defendant employers to make interim payments would allow "a maliciously motivated Fund [to] systematically bankrupt entire groups of companies, on no other basis than, for example, a history of not hiring union workers." *Teamsters,* 321 F.Supp.2d at 443.

Fortunately, the answer to this dispute is clear. In *Bowers v. Transportacion Maritima Mexicana, S.A.,* we held that "[t]he issue whether [an entity] was an 'employer' within the meaning of the MPPAA is properly for the courts, not an arbitrator, to determine." 901 F.2d at 261. In *Bowers,* the defendant had claimed that it was not an "employer," and thus was not subject to withdrawal liability, because it was not a signatory to the agreement establishing liability to the fund. *Id.* at 260, 262. We held that the defendant was nevertheless subject to withdrawal liability because the defendant was an "employer," despite being a non-signatory. *Id.* at 261–62. In doing so, we observed that the MPPAA prescribes arbitration only for disputes " 'between an *employer* and the plan sponsor.' " *Id.* at 261 (quoting 29 U.S.C. § 1401(a)(1)). Accordingly, we held that employer status is a "threshold legal issue" requiring "judicial resolution," since an entity that is not an employer cannot, under the MPPAA, be required to arbitrate. *Id.* at 261; *see also Mason & Dixon Tank Lines, Inc. v. Cent. States, Southeast & Southwest Areas Pension Fund,* 852 F.2d 156, 167 (6th Cir.1988) ("Since

only an 'employer' is required to arbitrate [under § 1401(a)(1) ], the district court may address this threshold question before arbitration.").

Despite *Bowers*'s clear holding, however, the Fund asserts that employer status is for the arbitrator, citing cases from other circuits that it claims support its position.[4] We disagree and see no conflict between *Bowers* and the decisions of other courts. Accordingly, we take this opportunity to clarify the proper forum for employer-status determinations under the MPPAA.

As the district court pointed out, *see Teamsters*, 321 F.Supp.2d at 442, a number of courts have drawn a distinction between disputes over (1) whether the defendant was ever an employer obligated under the MPPAA to make payments to the plaintiff pension fund, and (2) whether the defendant ceased to have that obligation before the payments in question became due. Courts addressing this distinction have uniformly held that the former question is for the court, while the latter is for the arbitrator. *See, e.g., Galgay v. Beaverbrook Coal Co.*, 105 F.3d 137, 141 (3d Cir.1997); *Rheem Mfg. Co. v. Cent. States Southeast & Southwest Areas Pension Fund*, 63 F.3d 703, 705–06 & n. 3 (8th Cir.1995); *Doherty v. Teamsters Pension Trust Fund of Phila. & Vicinity*, 16 F.3d 1386, 1390 (3d Cir.1994); *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 122 (4th Cir.1991); *Mason & Dixon Tank Lines*, 852 F.2d at 167.

The Seventh Circuit has aptly framed the difference between the two types of inquiries:

> [T]he question of whether one *remains* an employer as of a withdrawal date is not identical to the question of whether one ever became an employer for MPPAA purposes. The former question is an arbitrator's issue because its resolution hinges upon applying the MPPAA provisions concerning employer withdrawals specifically assigned by Congress to the arbitrator's purview. The latter question is one for a court because its resolution decides the arbitrator's authority over a dispute, but it is not the question truly at contest here. The factual controversy here turns more upon [defendant's] continued employer status, and not upon its "employer" status per se. This continued employer status issue is proper for arbitrator determination.

*Banner Indus., Inc. v. Cent. States, Southeast & Southwest Areas Pension Fund*, 875 F.2d 1285, 1291 (7th Cir.1989) (internal citations omitted; emphasis in original). We find this reasoning persuasive and therefore adopt the distinction between determinations of employer status per se, which are for the court, and determinations of continued employer status, which are for the arbitrator. Thus, we read *Bowers*, which holds that employer-status determinations are for the court, as limited to cases involving disputes over employer status per se, *i.e.*, disputes as to whether the company was ever an employer obligated to make payments to the plaintiff fund.[5]

---

**4.** The Fund also unconvincingly argues that *Bowers* is distinguishable and therefore inapplicable. *Bowers*, of course, concerned different facts: The defendant in *Bowers* asserted that it was not an employer under the MPPAA because it was not a signatory to an agreement with a multiemployer benefit plan, 901 F.2d at 260, 262, whereas Express and S & P claim they are not employers because they are not alter egos of, or under common control

with, Howard's. These factual distinctions, however, do not alter the nature of the dispute, which concerns the appropriate forum for employer-status determinations. The legal rule that *Bowers* announced therefore applies here.

**5.** The defendant in *Bowers* tried to argue that it had never become an employer because it had never signed the agreement providing for

■ Having clarified *Bowers*'s scope, we easily conclude that it applies in this case. First, Express and S & P deny that they ever became employers for MPPAA purposes; they challenge the Fund's assertion that they were ever alter egos of, or under common control with, Howard's. These questions concern employer status per se. *See, e.g., Doherty*, 16 F.3d at 1390 ("[W]hether an individual *has ever had control* of a contributing company *as an alter ego* is a question for the courts to decide." (first emphasis in original; second emphasis added)). Since there is no dispute that appellees have never conceded that they were previously employers under the statute, both *Bowers* and our decision today require that the court, not the arbitrator, resolve that question.

■ In addition, arbitration would be inappropriate in this case because the parties' dispute does not fall under any of the provisions enumerated in § 1401(a).[6] *See* 29 U.S.C. § 1401(a) (imposing arbitration requirement only for disputes between employers and funds under sections 1381 through 1399). At issue in this case are the Fund's allegations that appellees are under common control with, and are alter egos of, Howard's. *See Teamsters*, 321 F.Supp.2d at 444. Common-control liability is established in § 1301, which does not fall within § 1401(a)'s enumerated range, while alter-ego liability does not arise from any particular statutory provision at all, but rather from a general federal policy of piercing the corporate veil when necessary to protect employee benefits. *See Bd. of Trs. of Teamsters Local 863 Pension Fund v. Foodtown, Inc.*, 296 F.3d 164, 169 (3d Cir.2002); *Lumpkin v. Envirodyne Indus., Inc.*, 933 F.2d 449, 460–61 (7th Cir.1991). Thus, § 1401(a) cannot apply for the addi-

pension benefits. *Bowers*, 901 F.2d at 261–62. In other words, the defendant raised a per-se employer status argument. The court rejected the argument, finding that the defendant, although a non-signatory, had nevertheless become an employer for MPPAA purposes by, *inter alia*, making payments that went to longshoremen's pension benefits. *Id.* We thus do no violence to *Bowers* by reading it as limited to per-se employer status disputes, since that case itself concerned such a dispute.

**6.** The Fund has alleged that appellees engaged in transactions to "evade or avoid withdrawal liability," pursuant to 29 U.S.C. § 1392(c), which is an enumerated provision. Section 1401(a) requires that such allegations be arbitrated when the defendant is an "employer." Indeed, evade-and-avoid allegations are often at the root of disputes over continued-employer status. *See, e.g., Flying Tiger Line v. Teamsters Pension Trust Fund of Phila. & Vicinity*, 830 F.2d 1241, 1247 (3d Cir. 1987); *Teamsters Joint Council No. 83*, 947 F.2d at 123; *Banner Indus.*, 875 F.2d at 1292–93. Here, however, where defendants' status is unclear, any dispute over evade-or-avoid allegations falls outside of § 1401(a)'s scope, even though it concerns an enumerat-

ed provision. Thus, appellees cannot be required to arbitrate the Fund's evade-or-avoid allegations.

We note that a fund that believes a non-employer entity has engaged in a transaction to evade-or-avoid liability, perhaps in conjunction with an employer, is not without recourse. Although a non-employer such as Express or S & P cannot be required to arbitrate evade-or-avoid claims under § 1401(a), or to make interim payments, *see* 29 U.S.C. § 1399(c)(2) (applying only to employers), it can be sued for engaging in evade-or-avoid transactions, *see IUE AFL–CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1056 (2d Cir.1993) (finding basis for such suits in 29 U.S.C. §§ 1392 and 1451); *see also Bd. of Trs., Sheet Metal Workers' Nat'l Pension Fund v. Ill. Range, Inc.*, 186 F.R.D. 498, 502 (N.D.Ill. 1999); *Connors v. Marontha Coal Co.*, 670 F.Supp. 45, 46–47 (D.D.C.1987). The district court was therefore mistaken when it stated that an evade-or-avoid lawsuit is "more properly [brought] against ... an admitted 'employer.'" *Teamsters*, 321 F.Supp.2d at 446. The Fund, however, never raised an independent evade-or-avoid claim, instead alleging evade-or-avoid conduct by appellees only in support of its alter-ego claim. *See id. Herrmann* is therefore inapplicable.

tional reason that this case does not involve a dispute over a determination under one of the provisions enumerated in that section.

In sum, the district court did not err when it refused to submit the employer-status question in this case to the arbitrator. Because the parties disputed whether Express and S & P had ever become employers under the MPPAA and because their dispute did not fall under provisions enumerated in § 1401(a), the arbitration requirement of that provision did not apply.

## II. The Merits

The Fund argues in the alternative that, even if employer status was a question for the district court, the district court erred on the merits. It asks us to remand the case to the district court, requesting in particular the opportunity to conduct further discovery. We decline the invitation.

■■ The Fund committed two serious procedural errors. First, because it failed to conduct discovery on the merits before responding to the appellees' cross-motion for summary judgment, the Fund was unable to dispute effectively the appellees' statement of uncontested facts submitted in support of their motion. As we have previously observed, a party's failure to seek discovery under Rule 56(f) before responding to a summary judgment motion is "itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate." *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 126 n. 1 (2d Cir.2004) (quoting *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1137 (2d Cir. 1994)). The Fund essentially wagered that it would not need to present evidence demonstrating the existence of a genuine issue of material fact on the merits. *See Teamsters*, 321 F.Supp.2d at 440; *cf. Lundeen v. Cordner*, 356 F.2d 169, 171 (8th Cir.1966) (per curiam) (non-movant

who had numerous opportunities to conduct discovery but did not do so could have foreseen "that her failure to present any concrete facts might cause her to suffer a summary judgment"). We see no reason to remand the case because the Fund misunderstood the rule of law on which it relied and lost its bet. *See United States v. Antioch Found.*, 822 F.2d 693, 697 (7th Cir.1987) (refusing to remand where appellant had "failed to take advantage of the opportunities it had to conduct discovery").

■ The second procedural error committed by the Fund was its failure to comply with the local rules governing summary judgment submissions in the Northern District of New York. Specifically, the Fund did not follow Local Rule 7.1(a)(3). That rule requires (1) that the nonmoving party in summary judgment proceedings "submit a mirror response to the moving party's statement of material facts, containing either an admission or denial of each allegation set forth by the moving party," *Teamsters*, 321 F.Supp.2d at 438, and (2) that "[e]ach denial ... set forth a specific citation to the record where the factual issue arises," Local Rule 7.1(a)(3). With respect to appellees' cross-motion for summary judgment on the merits, the Fund was the nonmoving party. In its Rule 7.1(a)(3) response, the Fund offered mostly conclusory denials of appellees' factual assertions and failed to include any record citations. *Teamsters*, 321 F.Supp.2d at 438. The district court, applying Rule 7.1(a)(3) strictly, reasonably deemed appellees' statement of facts to be admitted as to the common-control claim.

We have previously recognized that district courts have the authority to institute local rules governing summary judgment submissions, *see Amnesty Am. v. Town of W. Hartford*, 288 F.3d 467, 471 (2d Cir. 2002); *see also* 11 *Moore's Federal Practice* § 56.10[5] (3d ed.2005) (discussing the

practice generally), and have affirmed summary judgment rulings that enforce such rules, *see, e.g., Millus v. D'Angelo*, 224 F.3d 137, 138 (2d Cir.2000). Rules governing summary judgment practice are essential tools for district courts, permitting them to efficiently decide summary judgment motions by relieving them of the onerous task of "hunt[ing] through voluminous records without guidance from the parties." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 74 (2d Cir.2001); *see also Bordelon v. Chi. Sch. Reform Bd. of Trs.*, 233 F.3d 524, 527 (7th Cir.2000) (noting that a similar rule serves to "assist the court by organizing the evidence, identifying undisputed facts, and demonstrating precisely how each side proposed to prove a disputed fact with admissible evidence" (internal quotation marks omitted)); 11 *Moore's Federal Practice* § 56.10[5] (noting that rules like Rule 7.1(a)(3) are enforced in part "to facilitate decision on summary judgment motions").

Reliance on a party's statement of undisputed facts may not be warranted where those facts are unsupported by the record. *See, e.g., Holtz*, 258 F.3d at 73–74 (refusing to rely solely on party's undisputed statement of facts where the cited materials did not support the factual assertions). But such concerns are not present here. The Rule 7.1(a)(3) statement submitted by appellees was fully supported by the accompanying affidavits. Furthermore, the district court's strict application of Rule 7.1(a)(3) did not prejudice the Fund as to its alter-ego claim (which, as we will explain, is the only claim seriously pursued on appeal); with respect to that claim, the district court declined to rely solely on the parties' Rule 7.1(a)(3) statements, and instead "scour[ed] ... the record" independently. *Teamsters*, 321 F.Supp.2d at 439.

■ We highlight these procedural failings because they explain the paucity of evidence presented to the district court.

Whether or not full discovery might have produced a different record, the district court did not err in granting appellees' motion for summary judgment on the sparse record before it. As the district court's methodical analysis demonstrated, under the relevant Treasury regulations, appellees were not under common control with Howard's. *Id.* at 445. The Fund does not dispute this conclusion on appeal, and only half-heartedly renews its common-control claim by raising a constructive-ownership argument for the first time in its reply brief. We need not consider an argument raised for the first time in a reply brief, *see* Fed. R.App. P. 28(a); *Booking v. Gen. Star Mgmt. Co.*, 254 F.3d 414, 418 (2d Cir.2001), and, in any event, the Fund's constructive-ownership argument is without merit. The Fund relies on 26 U.S.C. § 1563(e)(1), which defines constructive ownership as, *inter alia*, "an option to acquire stock." Because Samuel Sr. and Philip Sr. had a right of first refusal as to Express and S & P, the Fund asserts that they were constructive owners of those entities. A right of first refusal, however, is not the same thing as a stock option, but is contingent upon a condition that may never occur. The holder of a stock option, however, may exercise that option at will. *See, e.g., Fru–Con Constr. Corp. v. KFX, Inc.*, 153 F.3d 1150, 1157–58 (10th Cir.1998); *Pincus v. Pabst Brewing Co.*, 893 F.2d 1544, 1549 (7th Cir.1990); *St. Louis Union Trust Co. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 562 F.2d 1040, 1046 (8th Cir.1977). Because § 1563(e)(1) makes no reference to rights of first refusal, the Fund's argument fails.

■ Just as unconvincing are the Fund's alter-ego claims. Our inquiry on alter ego status "focuses on commonality of (i) management, (ii) business purpose, (iii) operations, (iv) equipment, (v) customers, and (vi) supervision and ownership."

*Newspaper Guild of N.Y. v. NLRB*, 261 F.3d 291, 294 (2d Cir.2001); *see also Local One Amalgamated Lithographers of Am. v. Stearns & Beale, Inc.*, 812 F.2d 763, 772 (2d Cir.1987).

We agree with the district court that the eighteen allegations raised by the Fund in its memorandum of law below, and recited verbatim in its appellate brief, are insufficient to demonstrate the existence of a triable issue of material fact on the alter-ego question. *See id.* at 447–51. Nothing in the record, for instance, suggests that appellees shared the same customer base or equipment as Howard's. Nor does the Fund dispute appellees' assertion that they and Howard's were engaged in different, though related, lines of business within the freight transportation industry. Appellees' involvement in different lines of business from Howard's, and from each other, *see Teamsters*, 321 F.Supp.2d at 438–39, weighs against finding a shared business purpose, even if management personnel overlapped. *See Newspaper Guild of N.Y.*, 261 F.3d at 301–02 (finding that two subsidiary business of single newspaper did not share same business purpose, even though they had the same management, because the businesses had different strategic and financial goals); *Stardyne, Inc.*, 41 F.3d at 151 ("The main focus of the [alter-ego] inquiry is to determine whether the two employers are the same business in the same market."). Nor are the Fund's allegations of a common mailing address and shared management sufficient by themselves to raise a triable issue of fact; where entities are engaged in different lines of business, which serve different business purposes, common space and shared management cannot alone create alter-ego status. *See Lihli Fashions Corp.*, 80 F.3d at 749. In the end, the Fund has failed to persuade us that it has a viable claim for alter-ego liability. Summary judgment for appellees was therefore proper.

We have carefully considered all of the Fund's remaining contentions and find them to be without merit.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.