NOT PRECEDENTIAL

_____

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 09-2748

_____

PENSKE LOGISTICS, LLC;
PENSKE TRUCK LEASING CO., L.P.,

Appellants

v.

FREIGHT DRIVERS AND HELPERS LOCAL 557 PENSION FUND;
THE FREIGHT DRIVERS AND HELPERS LOCAL UNION NO. 557
PENSION FUND BOARD OF TRUSTEES; WILLIAM ALEXANDER;
MARK GAREY; PETER HASSLER; THOMAS K. WOTRING

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(5:08-cv-02051)
District Judge:  Hon. Lawrence F. Stengel

_____

Argued: March 9, 2010

Before:   MCKEE, BARRY and GREENBERG, Circuit Judges

(Opinion filed:  April 21, 2010)

_____

1

Counsel for Appellants

DAVID R. LEVIN (ARGUED)
MARK E. FURLANE
BENJAMIN S. LUPIN
Drinker, Biddle & Reath
1500 K Street, N.W.
Suite 1100
Washington, DC 20005-0000

Counsel for Appellees

HELENE V. HEDIAN (ARGUED)
COREY SMITH BOTT
BRIAN G. ESDERS
Abato, Rubenstein & Abato
809 Gleneagles Court
Suite 320
Baltimore, MD 21286-0000

OPINION
_____

MCKEE, *Circuit Judge*

Appellants Penske Logistics, LLC and Penske Truck Leasing Co., L.P. (collectively "Penske") appeal a stay entered by the district court. For the reasons that follow, we will affirm.

As we write primarily for the parties who are familiar with the factual and procedural background of this case, we set forth only those facts crucial to our analysis. Freight Drivers and Helpers Local Union No. 557 Pension Fund (the "Plan") is a multiemployer pension plan as defined by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. § 1301(a)(3). By letter dated March 6, 2006 and titled "Notice of Assessment of Partial Withdrawal Liability[,]" the Plan's Board of Trustees notified Penske of a partial withdrawal liability under 29 U.S.C. § 1385 of approximately $3.9 million. The determination was based on a decline in contributions to the Plan by Leaseway Motorcar Transport Company from 2002 to 2004. Leaseway was

under common control with Penske from at least 1996 until its sale on March 26, 2004.[1]

The letter laid out a payment schedule and demanded payment as required by 29 U.S.C.

§§ 1382 and 1399. Penske requested review of the Trustees' May 6, 2006 determination

under 29 U.S.C. § 1399(b)(2)(A) by letter dated May 30, 2006, arguing that it was not

liable for the partial withdrawal. At the same time, Penske began making payments to the

Plan as required by the MPPAA. 29 U.S.C. § 1399(c)(2) ("Withdrawal liability shall be

payable . . . beginning no later than 60 days after the date of the demand notwithstanding

any request for review or appeal of determination of the amount of such liability or of the

schedule"). The Trustees responded by letter dated October 2, 2006. They agreed with

Penske on one issue,"that the withdrawal occurred as of the last day of 2004, rather than

2002." The Trustees concluded, however, that "[i]n view of the fact that we have not yet

had the opportunity to review the substantive information about the March 26, 2004

transaction, and because the CBUs do indicate that a partial withdrawal occurred, we

respectfully decline at this time to withdraw the Fund's assessment of partial withdrawal

liability." Penske initiated arbitration to contest its liability to the Plan pursuant to 29

U.S.C. § 1401. To date, arbitration continues.

Thereafter, Penske sued the Fund and Trustees in district court seeking declaratory

---

[1]If Penske were under common control with Leaseway after that transaction, it would be liable for Leaseway's partial withdrawal. 29 U.S.C. §§ 1301(b)(1), 1392©; *see Flying Tiger Line v. Teamsters Pension Trust Fund of Phila.*, 830 F.2d 1241, 1244 (3d Cir. 1987). The Plan contends that the two may have continued to be under common control after March 26, 2004, when Penske sold Leaseway. That issue, which is relevant to Penske's liability, will be determined in the first instance in arbitration.

relief, injunctive relief, and damages. Penske alleged that the Trustees had failed to make a "determination" that Penske partially withdrew from the Plan as required by 29 U.S.C. §§ 1382 and 1399(b)(2) because the Trustees' October letter agreed with Penske on the withdrawal liability date. Accordingly, Penske argues, it was not obligated to make payments that the Plan demanded nor to arbitrate the issue of whether it was liable for a partial withdrawal.

Penske moved for summary judgment on December 1, 2008. On May 14, 2009, the district court denied Penske's motion for summary judgment. *Penske Logistics LLC v. Freight Drivers & Helpers Local Union No. 557*, No. 08 Civ. 2051, 2009 WL 1383298, at * 1 (E.D. Pa. May 14, 2009). The district court held that the Trustees' March 6, 2006 letter, in which it "determined that withdrawal liability was owed and notified Penske of the amount and payment schedule[,]" was sufficient to trigger the MPPAA's arbitration provision. *Id.* at *2. The district court stayed the case pending arbitration.[2] *Id.* It did not mention the Trustees' October 2, 2006 letter in its decision.

Arbitration proceedings mandated by 29 U.S.C. § 1401 are governed by the rules

---

[2] Penske's action sought only declaratory relief in the form of a finding that defendants had not made a determination as required by ERISA and injunctive relief requiring defendants to make such a determination. In denying Penske's summary judgment motion, the district court concluded as a matter of law that the Fund made a determination sufficient to trigger ERISA's arbitration requirement. *Penske Logistics LLC*, 2009 WL 1383298 at * 2. The district court went so far as to say that it was "unclear . . . why [defendants] chose not to title their response in opposition to summary judgment, a 'motion for reconsideration'" of the district courts decision denying defendants' motion to dismiss, implying that the court was deciding the merits of Penske's claims. *Id.* at *1 n.2. However, the district court did not order Penske's claims to be dismissed.

in the Federal Arbitration Act (FAA). *See* 29 U.S.C. § 1401(b)(3). Under the FAA, we have no jurisdiction to review "an interlocutory order . . . granting a stay of any action under section 3" of the FAA. 9 U.S.C. § 16(b)(1). Section 3 of the FAA applies to stays entered where "the issue involved in such suit or proceeding is referable to arbitration" and the district court so refers it. 9 U.S.C. § 3. The stay entered by the district court here is not such a stay. The district court did not refer the issue in this case – whether Penske made a "determination" under the relevant provisions of the MPPAA – to arbitration. Instead, the court decided the merits of Penske's claim. *Penske Logistics LLC*, 2009 WL 1383298 at **1 - 2. Accordingly, appellate jurisdiction lies under 28 U.S.C. § 1291. *See Brown v. Pacific Life Ins. Co.*, 462 F.3d 384, 391 (5th Cir. 2006) ("Although the district court did not dismiss the case, there was nothing left for the court to do but execute the judgment. . . . Under *Green Tree*, the order compelling arbitration . . . ended the litigation in federal court on the merits and was a final appealable decision under 9 U.S.C. § 16(a)(3).") (citations omitted); *Am. Int'l Specialty Lines Ins. Co. v. Elec. Data Sys. Corp.*, 347 F.3d 665, 668 (7th Cir. 2003) ("[I]f *all* the judge is retaining jurisdiction for is to allow the arbitrator's award to be confirmed without need for the filing of a separate lawsuit, the order to arbitrate is final (final enough may be a better way to put it) and therefore immediately appealable.") (emphasis in original); *cf. Bowers v. Transportacion Maritima Mexicana, S.A.*, 901 F.2d 258, 263 n.1 (2d Cir. 1990) ("9 U.S.C. § 1[6](b) . . ., does not defeat appellate jurisdiction . . . despite the fact that the effect of the district

5

court's order is to stay litigation of these claims. . . . Section 1[6] states that 'an appeal may not be taken from an *interlocutory* order' directing arbitration . . . . 9 U.S.C. § 1[6](b) (emphasis added). Here, we have a final judgment requiring an arbitration mandated by statute.").

Conclusions of law are subject to plenary review on appeal. *P.P. ex rel. Michael P. v. West Chester Area Sch. Dist.*, 585 F.3d 727, 735 (3d Cir. 2009). We agree with the district court's ultimate conclusion that defendants made a determination sufficient to trigger the arbitration requirement in 29 U.S.C. § 1401. *See Flying Tiger Line*, 830 F.2d at 1250 ("[O]nce an entity is an employer, it will . . . . be assessed withdrawal liability unless that employer satisfies a statutory provision relieving it of liability."). We note that Penske is not without remedy. Penske may contest the Plan's determination of liability in arbitration, 29 U.S.C. § 1401(a)(1), and the arbitrator's decision is subject to review by a court, *id.* at § 1401(b)(2). If Penske succeeds, it may seek reimbursement of all funds paid to the Plan with interest. *Bd. of Tr. of Trucking Employees of N. Jersey Welfare Fund, Inc.-Pension Fund v. Kero Leasing Corp.*, 377 F.3d 288, 304 (3d Cir. 2004).

Accordingly, we will affirm the decision of the district court.